13318

HALL v. BENEFIT ASSOCIATION OF RAILWAY EMPLOYEES

(161 S. E., 867)

*Messrs. Spencer & White,* for appellants,

*Messrs. James H. Glenn* and *C. W. McTeer,* for respond-ents,

January 6, 1932.

The opinion of the Court was delivered by Circuit Judge C. C. FEATHERSTONE, ACTING ASSOCIATE JUSTICE.

The parties will be designated as plaintiff and defendant.

Only a brief statement of the facts is necessary.

The action is upon an accident policy held by Jasper Hall, who, it is alleged, took carbolic acid, through mistake, and died as the result thereof, August 24, 1928. The company declined to pay, and suit was brought by the plaintiff, the beneficiary, on August 20, 1930. The defendant contested on the grounds: (1) That the insured suicided; (2) that he took the poison while in a drunken condition, which, if true, would avoid the policy; (3) that no such proof of loss, as required by the policy, was given. The plaintiff had a verdict for $1,000.00, the face of the policy, plus $172.70, interest, aggregating $1,172.70. From this judgment, defendant appeals.

Only three exceptions need be considered: (1) That the Court erred in excluding the Hamilton letters, offered by the defendant. (2) Error in refusing nonsuit and new trial upon the ground that due proof of loss was not given. (3) Error in including in the verdict interest from September 4, 1928, instead of from August 22, 1930.

The letters spoken of as Hamilton letters were communications written by Hon. David Hamilton, an honored member of the Chester bar, a member of the firm of Gaston, Hamilton & Gaston, dated December 5, 1928, and February 27, 1929, respectively, and addressed to the defendant. Both of the letters were written as the result of investigations made by the writer, and are, necessarily, based upon information obtained from others. They express the opinion of the writer that the insured took carbolic acid when in a drunken, crazed condition, thinking it was an intoxicant. The letters then go on, by way of argument, to try to convince the insurer that, as a matter of law, it was liable.

The testimony is somewhat in conflict as to whether or not Mr. Hamilton was employed by the plaintiff, and acting for her, at the time the letters were written; but, in fairness to the defendant, we will assume that he was.

We think the Court below was right in excluding the letters. First, upon the ground that, at best, they were only expressions of opinion, on the part of the writer, as to how the death of the insured was brought about. Upon their face, they show he had made an investigation; that he had gathered information from others, and had thus arrived at the conclusion drawn. And in that respect he occupied no better position than the plaintiff; and most assuredly, if she had undertaken to testify, as to her opinion, based upon what others said, it would not for a moment be contended that such testimony would have been competent.

That ground alone is sufficient, but we think that the refusal to admit the letters might just as well have been put upon other grounds.

In considering the question as to how far the Courts ought to go, in receiving the admissions of attorneys, we must bear in mind the very clear distinction drawn by all the authorities, between those made by attorneys of record, in pending suits for the purposes of trial, and those made otherwise.

■ The parties to a suit are bound by admissions, made by their attorneys of record. in open Court, or elsewhere, touching matters looking to the progress of the trial. Such practice is almost of everyday occurrence; and this statement is so elementary and understood so thoroughly by the profession as to need no citation of authority.

■ But even in cases where actions are pending, and attorneys are of record, there is a border line beyond which they cannot go and bind their clients. Attorneys, as such, without express authority, have no right to compromise or settle their clients' rights to release a lien, or substitute one security for another, in matters not in Court. *Ex parte Jones,* 47 S. C., 393, 25 S. E., 285;

*Dixon v. Floyd,* 73 S. C., 202, 53 S. E., 167; see, also, *Gibson v. Nelson,* 111 Minn., 183, 126 N. W., 731, 31 L. R. A. (N. S.), 523, 137 Am. St. Rep., 553, and 132 Am. St. Rep., 156, note; *Stone v. Bank of Commerce,* 174 U. S., 412, 19 S. Ct., 747, 43 L. Ed., 1028.

If that be true, then it could scarcely be argued that an attorney at law, not of record, with no suit pending, even though he have a claim which he is trying to collect for his client, would have authority to bind his client by making admissions as to the facts upon which the claim is founded.

The right of an attorney to bind his client is, of course, founded upon the law of agency, and, bearing in mind that an agent cannot, by way of narrative statement, as to a past transaction, bind his principal, for the reason that it is not a part of the *res gestae,* the view above expressed finds support in the following, taken from 22 C. J., 380: "A ground of exclusion, quite as potent (referring to the *res gestae* rule) may be found in a consideration of the fact that it is no part of an agent's duty to prejudice his principal, by narrative statements, construing or otherwise affecting his principal's rights, or liabilities, or to discuss the propriety of his conduct, even in relation to the subject matter of the agency."

Of course, by the citation of this authority, nor by anything that is said, is it intended to reflect upon Mr. Hamilton. We have already held that the letters were mere expressions of his opinion, founded upon facts obtained from others. We are only endeavoring to show that in no event could the statement bind the plaintiff by way of admission.

The following citation from 22 C. J., 393, note 3, is in point: "Where a letter was written before suit, by one who subsequently appeared as defendant's attorney in the suit, it was held not to be admissible without proof that the letter was authorized."

Another citation in point is found in 22 C. J., 294, note 5: "An unauthorized letter, by an attorney, to a person against whom the client intends to bring suit, is not binding on the client."

Mr. Hamilton's firm never brought this action, but it was brought by other attorneys.

The case from Georgia cited by appellants' attorneys is not in point. *Clark v. Emerson,* 141 Ga., 612, 81 S. E., 870. There, the attorney claimed an interest in the judgment, which it was claimed had been paid; and the admissions of the attorney were competent as against himself.

For a full and very interesting discussion of the right of an attorney to bind his client by admissions, see *Gibson v. Nelson,* 111 Minn., 183, 126 N. W., 731, 31 L. R. A. (N. S.), 523, 137 Am. St. Rep., 552-553; 132 Am. St. Rep., 155-156, note, where full notes by Mr. Freeman are given.

This exception is overruled.

Second. Was there sufficient evidence to take the case to the jury on the question of waiver? We think there was.

The defendant had prompt notice of the death of the insured through the letter of Jack Carroll, who was acting for Mrs. Hall. This letter was answered September 4, 1928, in which sympathy was expressed, but the emphatic statement made, that blank for proof of loss could not be furnished, for, said the association: "We do not fully understand *how* his death occurred, and for this reason, we are unable to forward a blank to you. In order to get this matter straightened out, Mrs. Hall, we would appreciate it if you would forward to us a certified copy of the death certificate. * * * "

The very object of sending a blank to Mrs. Hall was to enable her to tell the association *how* the death of her husband occurred; and yet we find the insurer giving that as the reason for refusing to send the blank. Did it have in mind at that time that liability would be denied? If not,

why refuse to send the blank and get the very information which it desired?

The policy does not require a *certified* copy of a death certificate. The association was, therefore, demanding something which it had no right to require. The policy required proof of death in ninety days.

Again, the policy says that notice containing "particulars sufficient to identify the insured" shall be deemed sufficient. What was the duty of the association upon the receipt of such notice? Let the contract answer: "The association upon receipt of such notice, will furnish to the claimant such forms as are usually furnished by it for filing proof of loss."

No blanks were furnished until December 11, 1928, when they were sent to Gaston, Hamilton & Gaston. The blanks were then filled out and filed with association August 22, 1930.

It would serve no useful purpose to go further into the details. A reading of the record will reveal testimony tending to show a denial of liability; that the association refused to pay; that plaintiff was forced to bring suit to get her money; and that, after suit was brought, the defendant denied liability and contested the claim, as its entire conduct all the way through indicated it set out to do from the beginning.

Where an insurance company denies liability after suit brought, it ought not to take much testimony upon which to predicate waiver as to proof of loss. But in this case the testimony was ample, the question was fairly and squarely submitted to the jury, and defendant lost out upon that issue.

This exception is overruled.

> Third. The refusal to sustain the foregoing exception, necessarily, carries with it the overruling of this exception.

If the defendant, as found by the jury, waived the proof of death, by a denial of liability it must follow that it was required to pay the money, with interest, from the time liability was denied, which was September 4, 1928, from which date the verdict of the jury carries interest.

The exception relating to interest is therefore overruled.

In conclusion, it may be stated that the defense involving suicide was abandoned. But, in any event, all the questions were passed upon by the jury, adversely to defendant's contentions.

We find no errors of law, and the judgment below is affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER, CARTER and BONHAM concur.

MR. JUSTICE COTHRAN did not participate on account of illness.