1980

JOHN B. SCHWARTZ, Respondent-Appellant v. Goldie L. SCHWARTZ (Beaver), Appellant-Respondent.

(428 S.E. (2d) 748)

Court of Appeals

*Deborah Wright,* Charleston, *for appellant-respondent.*

*D. Randolph Whitt,* of *Sherrill & Rogers,* Columbia, *for re-spondent-appellant.*

*Guardian Ad Litem Harriet H. Vaughn,* of *Vaughn & Lawrence,* Charleston.

Heard Feb. 16, 1993; Decided March 22, 1993.

Reh. Den. April 20, 1993.

GOOLSBY, Judge:

This case involves an interstate custody battle over a minor daughter. John B. Schwartz (the father) brought this action in South Carolina against Goldie L. Schwartz (the mother) to enforce a California custody decree. The mother counterclaimed for a change in custody. The South Carolina family court issued orders finding that California had jurisdiction to change primary physical custody of the child from the mother to the father by giving the father sole physical custody of the child, that the California decree was entitled to full faith and credit, that the South Carolina family court had jurisdiction to entertain a change in custody action, and that no sufficient showing of a change in circumstances had been shown by the mother. The family court ordered the mother to turn the child over to the father. The South Carolina Supreme Court issued a writ of supersedeas to maintain the status quo pending appeal. Both the mother and the father appeal. The dispositive issue concerns whether California had jurisdiction to change the child's custody from the mother to the father. We reverse.

The child, who is now six years old, was born in California, the place where the mother and father were married. The mother left the marital home in January 1988, allegedly because of physical abuse by the father toward the mother. She took the child to South Carolina, along with her other two daughters from her first marriage. They joined the mother's parents and other family members in South Carolina.

A California court granted the father a divorce from the mother in August 1988. The divorce decree gave the parties joint legal custody of the child, with the mother receiving primary physical custody and the father receiving specified visitation rights. The court also ordered the father to pay child support.

The father did not visit with the child from January 1988 through August 1988, the date of the divorce. During the ten months following the divorce decree, the father visited with the child only twice. On both occasions, the mother, at the father's expense, brought the child to California. The child visited with her father for approximately one week in October 1988 and for two days in May 1989.

In June 1989, the father brought an action in California for a change of custody. While the mother sent a letter to the court in response to the show cause order, she did not file an answer. The California court modified its original decree in September 1989 and awarded sole custody of the child to the father. The court did so without taking any testimony and without making any findings of fact as to jurisdiction, change in circumstances, or the best interests of the child. The judge who signed the order modifying the original decree was not the judge before whom the matter came for a hearing.

The mother did not receive a copy of the change of custody order.

Not until May 1990, some eight months later, did the father visit with the child. This occurred in South Carolina and lasted only a few hours. That same month the father brought the instant action to enforce the California decree.

The mother answered the father's complaint, alleging, among other things, the California court lacked jurisdiction to modify its earlier decree because the child had no significant connection with California. The mother also counterclaimed

for custody based on changed circumstances and the best interests of the child.

Both parties moved for summary judgment on the issue of whether the California court had jurisdiction to modify its earlier decree. In an interlocutory order dated November 20, 1990, the family court found California had jurisdiction to issue the change of custody order. The family court also concluded that, while the California order was entitled to full faith and credit, it had jurisdiction to hear the change of custody issue raised by the mother.

At the hearing conducted by the family court on the change of custody issue, the mother testified and presented testimony from her husband, her sister, and the child's Sunday School teacher. The court refused requests by the mother to receive into evidence the guardian ad litem's report, to reopen the case and call the father to testify, and to consider the best interests of the child in addition to changed circumstances. The court also refused the guardian ad litem's request to conduct a full hearing and take the testimony of all of the parties.

After the presentation of the mother's case, the family court, as the record reflects, granted the father's "motion for a directed verdict." *But see* Rule 41(b), SCRCP ("After the plaintiff in an action tried by the court without a jury has completed the presentation of his evidence, the defendant . . . may move for a dismissal. . . ."); Rule 2(a), SCRFC (making Rule 41, SCRCP applicable to domestic relations actions). The family court ordered the mother to give custody of the child to the father at noon the following day.

The mother immediately petitioned the supreme court for a writ of supersedeas. The supreme court granted the petition on the grounds that it was not clear from the record whether the California court had jurisdiction to issue the decree and it was not clear whether any court had adequately adjudged the child's best interests by viewing all available evidence prior to changing the status quo.

I.

We agree with the mother's contention that the California court did not have jurisdiction in September 1989 to modify its earlier decree so as to award sole physical custody of the parties' daughter to the father.

Where the provisions of the federal Parental Kidnapping Prevention Act of 1980 (PKPA), 28 U.S.C. § 1738A (Supp. 1992)[1] and state law conflict, the federal

___

[1] The Parental Kidnapping Prevention Act provides, in relevant part:

(a) The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State.

(b) As used in this section, the term—

(1) "child" means a person under the age of eighteen;

(2) "contestant" means a person, including a parent, who claims a right to custody or visitation of a child;

\*　\*　\*　\*　\*

(4) "home State" means the State in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as parent, for at least six consecutive months. . . .

\*　\*　\*　\*　\*

(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if—

(1) such court has jurisdiction under the law of such State; and

(2) one of the following conditions is met:

(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;

(B)(i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse;

(D)(i) appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or

(E) the court has continuing jurisdiction pursuant to subsection (d) of this section.

(d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant.

act controls. *Marks v. Marks*, 281 S.C. 316, 315 S.E. (2d) 158 (Ct. App. 1984). We must first look, therefore, to the provisions of the PKPA to determine whether California properly exercised jurisdiction in this case.

It is undisputed California had jurisdiction to issue the August 1988 initial decree awarding primary physical custody to the mother. At the time the father commenced the action in January 1988, California "had been the child's home State within six months before the date of the commencement of the proceeding and the child [was] absent from [California] because of [her] removal ... or for other reasons, and a contestant continue[d] to live in [California]." 28 U.S.C. § 1738A (c)(2)(A)(ii).

It is equally clear California was not and had not been the child's home state within the past six months when the father commenced the action to modify the custody order in June 1989. *Id.* § 1738A(c)(2)(A). The child custody determination made by the California court would be consistent with the provisions of the PKPA, therefore, only if the California court, as required by § 1738A(c)(1), had jurisdiction under California law and if one of the other jurisdictional prerequisites contained in § 1738A(c)(2) were met. The requirements of subsections (B), (C), and (D) of § 1738A(c)(2), however, were not met because, as the record shows, South Carolina had become the child's home state as defined in the PKPA, the child was not physically present in California, and South Carolina had not declined to exercise jurisdiction.

California also did not have continuing jurisdiction under subsection (E) of § 1738A(c)(2). This is because, pursuant to § 1738A(d), jurisdiction continues only as long as the requirement of subsection (c)(1) is met, i.e., as long as "such court has jurisdiction under the law of such State."

We turn, therefore, to the question of whether California properly exercised child custody jurisdiction under its own state law.

California has enacted the Uniform Child Custody Jurisdiction Act (UCCJA).[2] The jurisdictional provisions of the Califor-

---

[2] Cal. Civ. Code § 5150 *et seq.* (1983) (amended 1992). Section 5152, which provides the jurisdictional grounds of California's version of the UCCJA, has been amended since the entry of the California order that modifies the original divorce decree; however, the statute remains the same substantively

nia version are almost identical to those adopted in South Carolina and are very similar to those of the PKPA. The only distinction between the PKPA and the UCCJA that is relevant here is the unqualified provision in the UCCJA that a court may exercise jurisdiction if "the child and at least one contestant[ ] have a significant connection with [the] state, and . . . there is available in [the] state substantial evidence concerning the child's present or future care, protection, training, and personal relationships." Cal. Civ. Code § 5152 (1983) (amended 1992). This jurisdictional requirement was not satisfied.

At best, the child had only slight contact with California at the time that the father began his custody action; consequently, California no longer had jurisdiction to modify its earlier decree. *See In re Marriage of Arnold*, 222 Cal. App. (3d) 499, 271 Cal. Rptr. 624 (1990) (where an original divorce decree

---

speaking, the changes being to the statute's format and its use of the male pronoun. We quote the statute as it appeared before its recent amendment:

(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if the conditions as set forth in any of the following paragraphs are met:

(a) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state.

(b) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships.

(c) The child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent.

(d)(i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (a), (b), (c), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.

(2) Except under paragraphs (c) and (d) of subdivision (1), physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.

(3) Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.

was issued in California and the father remained in California, California lacked jurisdiction to modify the decree because all of the child's significant contacts were with Canada); *cf. Sinclair v. Albrecht*, 287 S.C. 20, 23, 336 S.E. (2d) 485, 488 (1985) ("Connection with the decree state ends if all the parties involved have moved away *or* contact with the decree state has otherwise become slight.") (Emphasis added); *Kumar v. Superior Court*, 32 Cal. (3d) 689, 186 Cal. Rptr. 772, 777, 652 P. (2d) 1003, 1008 (1982) (wherein the California Supreme Court stated that "New York's jurisdiction to modify its decree ... depended, inter alia, on continued 'significant connection' of [the child] and at least one of his parents with the State of New York"); UNIF. CHILD CUSTODY JURISDICTION ACT § 14 comment at 9 U.L.A. 292 (1979) ("If ... all the persons involved have moved away or the contact with the state has otherwise become slight, modification jurisdiction would shift elsewhere," and "if the father ... continued to live in state 1, but let his wife keep the children for several years without asserting his custody rights and without visits of the children in state 1, modification jurisdiction of state 1 would cease").

In addition, the record does not support the conclusion that substantial evidence was available in California concerning the child's present or future care, protection, training, and personal relationships. *See Leslie L. F v. Constance F*, 110 Misc. (2d) 86, 441 N.Y.S. (2d) 911 (N.Y. Fam. Ct. 1981) (where the mother brought the children to California from New York in 1970 and one child lived in New York with the father for a year in 1978-1979, the New York family court held California no longer had jurisdiction to modify a custody order as to that child because substantial evidence was not available in California regarding the child's present or future care); *compare Kumar, supra* (wherein the California Supreme Court held New York retained jurisdiction to modify a New York decree because the child had lived most of his life in New York, his father lived there, there were many friends, relatives, and neighbors in New York who knew the child and could testify about his behavior and adjustment, the child had been wrongfully moved to California, the father exercised his visitation rights, and there was a court record and other evidence available in New York). In fact, as we noted previously, the California court made no findings as to jurisdictional facts. There

was also a total absence of any findings concerning the child's present or future care, protection, training, and personal relationships.

The California court, therefore, lacked jurisdiction under its own state law, and consequently under the PKPA, to modify its earlier custody decree and to award custody to the father.

## II.

Because we hold the California court did not have jurisdiction to issue the modified custody decree, we need not address the mother's argument that the decree is not entitled to full faith and credit in South Carolina.

## III.

Our finding that the California court lacked jurisdiction to modify its original decree awarding custody to the mother makes moot the counterclaim of the mother for custody in the South Carolina family court and the issues connected with her counterclaim. Our finding in this regard also makes moot the father's appeal from the family court's ruling that South Carolina had jurisdiction to entertain the mother's counterclaim.

## IV.

The mother asserts the family court erred in requiring her to pay the father's attorney fees and costs as well as the guardian ad litem's fees. We agree.

The family court based its award of attorney fees and costs and the guardian ad litem's fees on the mother's unjustified refusal to comply with the California modified custody decree. S.C. Code Ann. § 20-7-812(b) (1985).[3] In light of our finding that California did not have jurisdiction to issue the decree, the mother's refusal to comply with the decree cannot be characterized as unjustified or unreasonable. We therefore reverse the award of attorney fees and guardian ad litem fees and direct the father to pay the guardian ad litem's fees.

---

[3] Section 20-7-812(b) provides:

A person violating a custody decree of another state which makes it necessary to enforce the decree in this State may be required to pay necessary travel and other expenses, including attorneys' fees, incurred by the party entitled to the custody or his witnesses.

Reversed.

CURETON, J., and LITTLEJOHN, Acting J., concur.