812 A.2d 579

Cynthia L. KRIEBEL, Now Cynthia L. Lundeen, Appellee,

v.

Gary A. KRIEBEL, Appellant.

Supreme Court of Pennsylvania.

Argued March 5, 2002.

Decided Dec. 19, 2002.

Joanne Ross Wilder, Elisabeth K. Pride, Pittsburgh, for Gary A. Kriebel.

Serena Michele Newsom, Gary G. Gentile, Pittsburgh, for Cynthia L. Kriebel, now Cynthia L. Lundeen.

Before ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

## OPINION

Justice NEWMAN.

The issue presented in this case is whether the Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A (PKPA), is the controlling authority in determining if Pennsylvania has continuing jurisdiction of a custody matter where Pennsylvania courts had initial jurisdiction, but the custodial parent has moved the children to another state and the non-custodial parent remains in Pennsylvania.

### Facts and Procedural History

Appellee, Cynthia L. Kriebel (Mother) and Appellant, Gary A. Kriebel (Father) were married on July 5, 1980 and separated in May of 1993. They were divorced on July 18, 1997. The

parties have three children: Nicholas, born March 3, 1983, Christian, born June 14, 1985, and Caitlin, born October 9, 1989. Approximately one year after separation, on May 12, 1994, Mother filed a Complaint in Divorce in the Court of Common Pleas of Clarion County (trial court) seeking spousal and child support, equitable distribution and custody. In October of 1994, Mother indicated her desire to move to North Carolina with the three children. The parties entered into a stipulation in which, *inter alia*, Father agreed to the move and to pay directly to Wife $6,000 per month in child support. The stipulation became an Order of Court on October 26, 1994. Mother and the children moved to North Carolina shortly thereafter, and Father remained in Clarion County.

In May of 1997, Father filed a Motion for a Custody Conciliation Conference based on the custody count in Mother's divorce complaint.[1] On May 16, 1997, the trial court scheduled a custody conciliation for June 19, 1997. One week before the scheduled conciliation, Mother filed a Complaint for Custody in Orange County, North Carolina. On June 13, 1997, she also filed preliminary objections in Clarion County, asserting that Pennsylvania lacked jurisdiction regarding custody. However, on July 10, 1997, the parties reached an interim agreement regarding physical custody of the children that they entered with the Pennsylvania and North Carolina courts. The agreement provided that it did not constitute a wavier of either party's right to challenge jurisdiction in the Pennsylvania or North Carolina custody proceedings.[2] On May 13, 1998, Father filed a Petition for Special Relief with the trial court in which he sought partial physical custody of the children. Mother then requested briefing and argument on the preliminary objections that she filed in June of 1997. On June 5, 1998, the trial judge held a telephone conference

1. Pa.R.C.P.1915.4–2 provides that a court of common pleas may elect to have partial custody and visitation matters heard by a conference officer instead of a judge. If the parties are unable to reach an agreement following the conference, the matter is then scheduled for a hearing before a hearing officer.

2. Because the parties reached an agreement, the custody conciliation conference did not take place on June 19, 1997.

with the North Carolina judge. They agreed that the Pennsylvania hearing on Father's request for custody would go forward that day without deciding the issue of jurisdiction. The trial court entered a partial custody order at the June 5, 1998 hearing, and then entertained argument on jurisdiction. By Opinion and Order filed June 12, 1998, the trial court determined that Pennsylvania retained jurisdiction. The court noted that pursuant to the Pennsylvania Uniform Child Custody Jurisdiction Act, 23 Pa.C.S. §§ 5341–5366 (UCCJA), North Carolina is the home state of the children. However, it held that "it is in the best interest of the children that the Commonwealth of Pennsylvania retain continuing jurisdiction in this custody action because father and the children have significant contacts with Pennsylvania, and more significantly, Clarion County provides the optimum access to the relevant evidence concerning the issue at [sic] father's partial custody." Trial Court Opinion dated June 12, 1998 at 2.

Mother then filed a Motion to Modify Custody in North Carolina. On July 20, 1998, the North Carolina District Court (trial court) issued an Order refusing to consider the motion because it determined that the Pennsylvania Order of June 5, 1998 was entitled to full faith and credit. Mother appealed this decision to the North Carolina Court of Appeals (an intermediate appellate court). While the appeal was pending, Father filed a Motion for Custody Hearing in Pennsylvania, and the matter was scheduled for June 29, 1999. On June 1, 1999, the North Carolina Court of Appeals vacated the July 20, 1998 Order and remanded the matter to the District Court in light of its decision in *Potter v. Potter*, 131 N.C.App. 1, 505 S.E.2d 147 (1998), in which it construed the PKPA and the Uniform Child Custody Jurisdiction Act (UCCJA). Mother then sought an immediate continuance of the June 29, 1999 Pennsylvania hearing. Four days before that hearing, on June 25, 1999, the North Carolina District Court entered an Order confirming that it had "jurisdiction over all questions of child custody and visitation in this matter." Counsel for Mother appeared at the June 29, 1999 hearing in Pennsylvania to argue Mother's Motion for Continuance. Following argu-

ment, the trial court determined that Pennsylvania continued to have jurisdiction. Once the court made this decision, counsel for Mother excused herself from the courtroom. The trial court then issued an Order consistent with the parties' previous custody agreement.

Mother filed an appeal to the Superior Court, which reversed the Order of the trial court. The Superior Court did not engage in an analysis based on the PKPA. However, it held that the children did not have sufficient contacts with Pennsylvania for this Commonwealth to assert continuing jurisdiction of the instant custody matter. On appeal to this Court, the sole issue raised by Father is whether the PKPA is the controlling authority in determining whether Pennsylvania retains jurisdiction.

## *Discussion*

▮ This Court has noted that we rely upon the PKPA and UCCJA when reviewing the jurisdiction of courts to render custody determinations. *In re N.M.B.*, 564 Pa. 117, 764 A.2d 1042 (2000). The PKPA provides in relevant part:

Full faith and credit given to child custody determinations

(a) The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsections (f), (g), and (h) of this section, any custody determination or visitation determination made consistently with the provisions of this section by a court of another State.

. . .

(c) A child custody or visitation determination made by a court of a State is consistent with the provisions of this section only if—

(1) such court has jurisdiction under the law of such State; and

(2) one of the following conditions is met:

(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had

been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;

**(B)** (i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

**(C)** the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because the child, a sibling, or parent of the child has been subjected to or threatened with mistreatment or abuse;

**(D)** (i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody or visitation of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or

**(E)** the court has continuing jurisdiction pursuant to subsection (d) of this section.

**(d)** The jurisdiction of a court of a State which has made a child custody or visitation determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant.

**(e)** Before a child custody or visitation determination is made, reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental

rights have not been previously terminated and any person who has physical custody of a child.

(f) A court of a State may modify a determination of the custody of the same child made by a court of another State, if—

    (1) it has jurisdiction to make such a child custody determination; and

    (2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.

(g) A court of a State shall not exercise jurisdiction in any proceeding for a custody or visitation determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody or visitation determination.

(h) A court of a State may not modify a visitation determination made by a court of another State unless the court of the other State no longer has jurisdiction to modify such determination or has declined to exercise jurisdiction to modify such determination.

28 U.S.C. § 1738A.

We have described the application of the PKPA as follows: Before the courts of this Commonwealth may assert jurisdiction over a child custody or visitation matter with interstate dimensions, the courts must engage in a multi-step analysis. First, the Pennsylvania court must decide whether the matter before it acts as a modification to a custody or visitation order of another State that was rendered "consistently with the provisions" of the PKPA. 28 U.S.C.A. § 1783A(a). Assuming these conditions are met, the PKPA requires that then the Pennsylvania court must look to whether it could, absent the out-of-state proceeding assert appropriate jurisdiction. 28 U.S.C.A. § 1783A(f)(1). If, as is the case before us, Pennsylvania is the "home state" of the child, the PKPA allows Pennsylvania to modify the other State's decree only if that other State "no longer has

jurisdiction" or has declined jurisdiction. 28 U.S.C.A. § 1783A(f)(2), (h). The language, "no longer has jurisdiction" in Section 1783A(f)(2) and (h) should be read in conjunction with Section 1783A(d), *supra*, that specifies when a State has continuing jurisdiction. The PKPA provides that the other State would have "continuing jurisdiction" if the initial decree complied with the PKPA at the time the decree was rendered; if under that other State's law, the State maintains jurisdiction over the decree; and, the other State remained the residency of any of the parties at the time of the Pennsylvania proceeding. 28 U.S.C.A. §§ 1738A(d), 1738A(c)(1).

*In re N.M.B.* at 1047–1048. As the Superior Court correctly recognized, Pennsylvania was the state of initial jurisdiction in the instant matter because it approved and made an Order of Court the parties' stipulation that provided for relocation in 1994. Mother attempted to modify the Pennsylvania Order by filing a Complaint for Custody in North Carolina on June 12, 1997 and a Motion to Modify on June 29, 1998.

The PKPA provides in relevant part that the home state is "the State in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as parent, for at least six consecutive months." 28 U.S.C.A. § 1738A(b)(4). This is consistent with the definition of home state provided in Section 5343 of the UCCJA. The trial court correctly held that the home state of the children was North Carolina, because as of May 1997, the time when the relevant proceedings began, the children had been living continuously in North Carolina for the preceding two years and six months.

The instant matter involves a Pennsylvania custody order and one contestant, Father, who remains a Pennsylvania resident. However, a child custody determination made by a Pennsylvania court is consistent with the PKPA only if the Pennsylvania court has jurisdiction under Pennsylvania law. 28 U.S.C.A. § 1783A(c)(1),(d).

The issue of jurisdiction in custody cases is determined by the UCCJA, which provides:

**(a) General rule.**—A court of this Commonwealth which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) this Commonwealth:

(i) is the home state of the child at the time of commencement of the proceeding; or

(ii) had been the home state of the child within six months before commencement of the proceeding and the child is absent from this Commonwealth because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this Commonwealth;

(2) it is in the best interest of the child that a court of this Commonwealth assume jurisdiction because:

(i) the child and his parents, or the child and at least one contestant, have a significant connection with this Commonwealth; and

(ii) there is available in this Commonwealth substantial evidence concerning the present or future care, protection, training and personal relationships of the child;

(3) the child is physically present in this Commonwealth, and:

(i) the child has been abandoned; or

(ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent;

(4) (i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (1), (2) or (3), or another state has declined to exercise jurisdiction on the ground that this Commonwealth is the more appropriate forum to determine the custody of the child; and

(ii) it is in the best interest of the child that the court assume jurisdiction; or

(5) the child welfare agencies of the counties wherein the contestants for the child live, have made an investigation of

the home of the person to whom custody is awarded and have found it to be satisfactory for the welfare of the child.

(b) **Physical presence insufficient.**—Except under subsection (a)(3) and (4), physical presence in this Commonwealth of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this Commonwealth to make a child custody determination.

(c) **Physical presence unnecessary.**—Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.

23 Pa.C.S. § 5344. Because the home state of the children was not Pennsylvania, the sole basis for retaining jurisdiction is if the children have a "significant connection with this Commonwealth" and if substantial evidence concerning their "present or future" lives "is available" in Pennsylvania as provided by Section 5344(a)(2)(i) and (ii). Accordingly, although the trial court and the Superior Court did not specifically perform the multi-step PKPA jurisdictional analysis set forth in *N.M.B.*, they applied the correct law, which is the Pennsylvania version of the UCCJA, to determine the critical issue of whether Pennsylvania retained continuing jurisdiction of this matter. As examples of cases where courts have applied the UCCJA to determine continuing jurisdiction when engaging in a complete PKPA jurisdictional analysis we note that in the case of *Wilson v. Gouse*, 263 Ga. 887, 441 S.E.2d 57 (1994), the Georgia Supreme Court analyzed the Ohio version of the UCCJA and determined that Ohio did not retain continuing jurisdiction of a custody order, thereby allowing Georgia to modify the Ohio order under the PKPA; in *Schwartz v. Schwartz*, 311 S.C. 303, 428 S.E.2d 748 (Ct.App. 1993) the South Carolina Court of Appeals performed a PKPA analysis and held that the California version of the UCCJA did not permit California to retain jurisdiction of a custody matter where the child no longer had significant contacts with that state; and in *Quenzer v. Quenzer*, 653 P.2d 295 (Wyo. 1982), when determining whether it could exercise jurisdiction pursuant to the PKPA to modify a Texas custody order, the Wyoming Supreme Court looked to the Wyoming version of the UCCJA.

■   Having determined that the PKPA requires the courts of this Commonwealth to engage in a jurisdictional analysis pursuant to Section 5344 of the UCCJA, we must now consider whether the Superior Court erred in reversing the order of the trial court. The trial court held that it was in the best interests of the children for Pennsylvania to retain jurisdiction because Father and the children had significant contacts with this Commonwealth, and "Clarion County provides optimum access to the relevant evidence concerning the issue at [sic] Father's partial custody." Memorandum Opinion and Order dated June 12, 1998 at 2. The trial court further stated, "in support of judicial economy, we also adopt as our own, as fully and to the same extent as if set forth verbatim herein, all of defendant's brief in opposition to plaintiff's preliminary objection." *Id.* at 3. In the brief adopted by the trial court, Father notes that he and his new wife reside in Clarion County, as do the paternal grandparents and numerous paternal relatives. Father's family gas and oil well business is in Clarion County, and Father has significant community ties to the area. Both Mother and the children have friends in Clarion County with whom they have contact. Upon careful review of the record in this case, however, we agree with the Superior Court that there are insufficient facts to support the conclusion of the trial court that the children have significant contacts with Pennsylvania. The children have lived in North Carolina since 1994 and have attended school there since that time. They participate in extra-curricular activities and team sports in North Carolina, and receive all their medical and psychological care there as well. Accordingly, Father did not establish that the children have "a significant connection with this Commonwealth," as required by Section 5344(a)(2)(i). Furthermore, Father did not establish that "substantial evidence concerning the present or future care, protection, training and personal relationships of the child[ren]," as required by Section 5344(a)(2)(ii), can be found in Clarion County.

## Conclusion

The trial court and the Superior Court erred by failing to perform a PKPA jurisdictional analysis as set forth in *N.M.B.*

However, such failure does not require us to remand the matter because both courts applied the appropriate law, the Pennsylvania version of the UCCJA, to determine if the Commonwealth retains jurisdiction of the instant custody matter. Because the Superior Court correctly held that pursuant to the UCCJA, jurisdiction lays in North Carolina, we affirm the Order of the Superior Court.

Justice CASTILLE files a dissenting opinion in which Justice SAYLOR joins.

Justice CASTILLE, dissenting.

The majority opinion correctly outlines the analysis a court must generally perform under the Parental Kidnapping Protection Act (PKPA) and the Uniform Child Custody Jurisdiction Act (UCCJA) in determining jurisdiction in a multijurisdiction child custody dispute. However, I disagree with the majority's finding that the undisputed facts of this case dictate a conclusion that jurisdiction here rests in North Carolina. In my view, Pennsylvania has continuing jurisdiction; accordingly, I respectfully dissent.

As the majority aptly notes, jurisdiction in this case hinges on which state has jurisdiction pursuant to the UCCJA. The UCCJA would confer jurisdiction where, *inter alia*, Pennsylvania is the home state of the child at the time of the commencement of the proceeding. 23 Pa.C.S. § 5344(a)(1)(i). However, the UCCJA is silent as to what constitutes "commencement" of a custody action. I am aware that the Superior Court has held that, for purposes of determining jurisdiction under the UCCJA, the commencement date is the date of the proceeding then before the court, and not the initiation date of any previous action between the parties. *See Favacchia v. Favacchia,* 769 A.2d 531 (Pa.Super.2001); *Simpkins v. Disney,* 416 Pa.Super. 243, 610 A.2d 1062 (1992); *Black v. Black,* 441 Pa.Super. 358, 657 A.2d 964 (Pa.Super.), *appeal denied,* 542 Pa. 655, 668 A.2d 1119 (1995). This conclusion, however, is not drawn from the plain language of the statute itself, and, since this Court has yet to address the issue, it is not binding upon us.

In my view, Mother commenced the relevant custody action in this case as part of her initial divorce complaint filed in Pennsylvania in 1994. The immediate result of that action was a custody order entered by a Pennsylvania judge that same year. That order derived from a stipulation in which Father agreed to Mother's moving to North Carolina with the children and also agreed to pay $6,000 per month in child support. During the period between 1994 and 1997, custody of the parties' children was governed by the 1994 Pennsylvania custody order. In 1997, when the 1994 order was still in force, Father filed a motion for a conciliation conference, clearly seeking conciliation concerning the 1994 Pennsylvania order entered on the custody count in Mother's divorce complaint.

I do not view Father's 1997 motion as commencing some new custody action, but rather as being exactly what it purported to be: an attempt at conciliation given complications arising from the 1994 order then in force. It was Mother who instituted a new custody action, in a new jurisdiction, notwithstanding the existence and pendency of her original Pennsylvania action. There is no dispute that the children, like Mother and Father, resided in Pennsylvania at the time Mother commenced the original custody action in 1994. A fair reading of the UCCJA thus vests jurisdiction in Pennsylvania in this case because the children resided in Pennsylvania at the time of the commencement of the relevant proceeding.

I am troubled by the chaos that may result from the majority opinion permitting a parent to uproot children and then, six months later, haul the other parent into a court in a distant jurisdiction which is now the children's "home state," perhaps even multiple times and in multiple jurisdictions during a child's minority. Here, in response to Mother's 1994 Pennsylvania complaint, Father agreed to Mother's relocation to North Carolina with the children. Under the majority's holding, Father, who has continuously resided in Pennsylvania—a jurisdiction in which, the record shows, the children have maintained significant contacts—is now rewarded for his

accommodation by being forced to litigate succeeding issues arising out of a Pennsylvania custody order secured by Mother in a state hundreds of miles away. One result of the majority's decision will be to encourage those in Father's position not to be so accommodating in the future, but instead to vigorously oppose any relocation of the children to another jurisdiction—a result that may not be in the best interests of the children.

I believe that the language of the UCCJA is flexible enough to encompass a wide range of factual scenarios that arise in the context of child custody. I would hold that where, as here, the custody action was originally commenced in Pennsylvania and a custody order was properly entered, and the later filing merely sought court assistance with enforcing that order, the plain language of the UCCJA permits a Pennsylvania court to continue to exercise jurisdiction over custody disputes. Accordingly, I would reverse the order of the Superior Court.

Justice SAYLOR joins this dissenting opinion.