620 S.E.2d 333

**Robert WIDDICOMBE, Respondent,**

**v.**

**Rachel P. TUCKER–CALES f/k/a DuPree, Appellant.**

**No. 4022.**

Court of Appeals of South Carolina.

Submitted June 1, 2005.

Decided Aug. 29, 2005.

Rehearing Denied Oct. 20, 2005.

78

Rachel Putnam Tucker–Cales, of Mt. Pleasant, Pro Se, for Appellant.

Paul B. Ferrara, III, of Summerville, for Respondent.

WILLIAMS, J.:

Rachel P. Tucker–Cales (Mother) appeals the family court's denial of her motion for relief from judgment. We affirm.[1]

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

## FACTS

This child custody case has a tortured procedural history. On December 15, 1995, the family court approved a settlement agreement between Robert Widdicombe (Father) and Mother, which addressed the custody of their minor child, a son born October 22, 1993. The settlement agreement provided that Mother would have custody and Father would have standard visitation. It also provided that neither party could take the child out of the jurisdiction without providing the other party 60 days' notice.

On August 22, 2000, Father, who had remarried and moved to Illinois, filed a summons and complaint in South Carolina seeking custody of his son. The complaint alleged, among other things, that Mother moved numerous times without notifying Father. The complaint also alleged that Mother's last known address was in South Carolina, but her present whereabouts were unknown.

In an affidavit attached to the complaint, Father recounted his longstanding hardships in locating and communicating with Mother and his son. He claimed he knew Mother and child were living in North Carolina, but for several years the only dependable way to get in touch with Mother was to withhold her support payments until she phoned. In 1998, according to Father, Mother dropped the child off at his home, claiming she would return the following morning. Mother did not return for two and a half weeks, and the child's maternal grandmother eventually picked him up. From 1998 to 2000, Father learned several disturbing facts regarding Mother and his son, including allegations that Mother was on probation for passing fraudulent checks and was involved in an abusive bigamous marriage. He became increasingly concerned when, in June 2000, Mother's probation officer notified him that Mother's whereabouts were unknown. Father then received a telephone call from the child's maternal grandmother informing him that Mother was living with her in South Carolina and he should send the child support payments there. A safety check performed by local police on August 2, 2000, confirmed that Mother and the child were in fact residing at the grandmother's home. Shortly thereafter, Father learned from Mother's probation officer that Mother was back in North

Carolina and the child was not enrolled in school. The maternal grandmother continued to claim that Mother and the child were in South Carolina. On August 16, however, Father learned with certainty that Mother and the child were in a shelter in North Carolina and that the child was hungry and sick. Shelter records indicate Mother moved into the shelter on August 3, 2000, one day after the police performed the safety check. School records from North Carolina indicate the child was enrolled for ten days in August of 2000.

From August 17 to August 31, 2000, Father left a series of voice mail messages on the maternal grandmother's answering machine. These messages indicate Father left Illinois and traveled to South Carolina to appear before the South Carolina family court.

On August 28, 2000, the family court issued an *ex parte* order granting Father immediate legal and physical custody of the child. This order was based on allegations in Father's affidavit discussed above. He picked up the child from a North Carolina day care center promptly after obtaining emergency custody and returned to Illinois.

Mother filed an answer and counterclaim to Father's motion for emergency relief in the South Carolina family court on November 11, 2000. Mother stated she moved to North Carolina in 1998 and returned to South Carolina in August 2000. Shortly thereafter, she moved back to North Carolina into a battered women's shelter. Importantly, Mother asserted that, despite her many relocations, the South Carolina family court had jurisdiction because she was a resident of Charleston County, South Carolina, and had been so for over one year. She admitted Father's allegations of being in a bigamous marriage, being investigated by social services in North Carolina, and being on probation for writing fraudulent checks. Mother demanded a hearing and sought full custody of the child.

On February 15, 2001, the family court issued a consent order granting temporary custody to Father.[2] On August 1, 2001, the family court struck the case from the active roster

---

2. In January of 2004, Father filed a petition to enroll this order in Illinois to establish Illinois as the proper forum to seek modification of custody.

pursuant to the 270–day rule, leaving the temporary order in effect. On August 15, counsel for Father submitted an order restoring the case to the active roster, but the court did not sign the order. On November 27, Mother filed a motion to dismiss the case for lack of personal and subject matter jurisdiction due to the fact that neither the child nor either parent was a resident of South Carolina on the date of the *ex parte* order. Mother then filed a motion to relieve counsel on the alleged grounds that her attorney knowingly made false statements in documents filed with the court and entered into consent orders without consulting with her.

The family court denied Mother's motion to dismiss, concluding that South Carolina has exclusive, continuing jurisdiction based on the 1995 custody order and Mother's residency in this state for more than one year. The family court also noted that no litigation was pending in any other state regarding custody of the child. Additionally, the family court denied Mother's motion to change custody because exigent circumstances did not exist warranting a change in custody. The order provided that the temporary consent order of February 15, 2001 was to remain in effect.

Mother filed a motion to reconsider on January 22, 2002, arguing again that because neither of the parents nor the child lived in South Carolina at the time Father's action was filed, the family court lacked subject matter jurisdiction. After a hearing, the family court denied the motion to reconsider. The family court found that Mother submitted herself to the family court's jurisdiction, and the case had continued without objection from Mother for over a year before she filed the motion to dismiss. Father was awarded $562.50 in attorney's fees.

Mother appealed to this court. On November 18, 2002, Father's motion to dismiss the appeal was granted on the ground that the appeal was interlocutory. Mother's subsequent writs of prohibition and mandamus were dismissed in June 2003.

On January 6, 2004, Mother filed an expedited motion for relief from judgment in the family court, again alleging the case was void *ab initio* for lack of subject matter jurisdiction. The family court denied Mother's motion, finding that no final

order had yet been issued in the case, and further found that the motion was not timely brought within the one-year statute of limitations. The family court reaffirmed that it had jurisdiction and awarded Father $775 in attorney's fees.

Mother then filed a motion to reconsider, limiting her request to only two issues: (1) whether the family court had jurisdiction at the commencement of the case; and (2) whether the family court failed to consider all the factors required by law in awarding attorney's fees in that it did not consider her financial condition. Mother alleged in her supporting affidavit that she moved to North Carolina in 1998 and was still living there when Father's complaint was filed. The family court denied Wife's motion on March 11, 2004. This appeal follows.

## STANDARD OF REVIEW

■ On appeal from the family court, this court has authority to determine facts in accordance with its own view of the preponderance of the evidence. *Murdock v. Murdock,* 338 S.C. 322, 328, 526 S.E.2d 241, 244–45 (Ct.App.1999). This court, however, is not required to disregard the family court's findings, nor should we ignore the fact that the family court judge, who saw and heard the witnesses, was in a better position to evaluate their testimony. *Badeaux v. Davis,* 337 S.C. 195, 202, 522 S.E.2d 835, 838 (Ct.App.1999); *Smith v. Smith,* 327 S.C. 448, 453, 486 S.E.2d 516, 519 (Ct.App.1997).

## LAW/ANALYSIS

### I. Interlocutory Appeal

We must first address Father's argument that this court lacks jurisdiction because the orders appealed from are interlocutory. We disagree.

Section 14–3–330 of the South Carolina Code (1976 & Supp. 2004) sets forth the requirements for appellate jurisdiction and reads as follows:

[Appellate courts] shall have appellate jurisdiction for correction of errors of law in law cases, and shall review upon appeal:

(2) An order affecting a substantial right made in an action when such order (a) in effect determines the action and

prevents a judgment from which an appeal might be taken or discontinues the action. . . .

Matters involving the custody of one's child certainly constitute a "substantial right" as contemplated in the South Carolina statute. *See Santosky v. Kramer,* 455 U.S. 745, 753–54, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (holding that parenting is a fundamental constitutional right and due process is mandatory when such a right is jeopardized). Much of the delay in receiving a final custody hearing can be attributed to Mother's failure to request that the case be restored to the active roster or file a new case seeking modification of custody. Nevertheless, the record reveals that although the emergency order temporarily changing custody, the temporary consent order, and the subsequent motion rulings are not true final orders, they are certainly being treated as such by the family court. The family court's order of January 15, 2002, reads, "[t]he prior Temporary Order of the Court of February 15, 2001 . . . not modified herein shall remain in full force and effect." Although the family court's January 6, 2004, order denied relief under Rule 60, SCRCP, on the basis that there was no final order in the case, it noted that the case had been stricken from the active roster for over three years and reflected no intention to have the case restored.

Under the unique factual circumstances of the present case, we conclude the family court orders have the practical effect of a final order affecting Mother's substantial rights.[3] In any event, the issues raised by Mother on appeal have been the subject of much contention in this case. They will inevitably be raised to the family court again in the future and, because they have been fully briefed by the parties, we find that it would be in the interest of judicial economy to decide the matters now. *See Southern Bell Tel. and Tel. Co. v. Hamm,* 306 S.C. 70, 75, 409 S.E.2d 775, 778 (1991) (deciding an issue on appeal in the interests of judicial economy). Accordingly, we move on to the merits of Mother's appeal.

## II. Subject Matter Jurisdiction

Mother's argument on appeal, as well as before the family court in several of her prior motion hearings, is that the South

---

3. Father's motion to dismiss this appeal based on its interlocutory nature was recently denied on similar grounds.

Carolina family court lacked subject matter jurisdiction to order the emergency change in custody. Specifically, she contends that the South Carolina did not have continuing jurisdiction under the provisions of the controlling Uniform Child Custody Jurisdiction Act, S.C.Code Ann. §§ 20–7–782 to 830 (1985) ("UCCJA") and the Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A (1988) ("PKPA"). We disagree.

The two statutes in question govern the subject matter jurisdiction of state courts to rule in interstate custody disputes. *See, e.g., Foley v. Foley,* 156 N.C.App. 409, 576 S.E.2d 383, 385 (2003); *In re Jorgensen,* 627 N.W.2d 550, 554 (Iowa 2001). Because the PKPA is federal legislation, its provisions will govern any conflict between it and the UCCJA (South Carolina's jurisdictional statute for interstate custody decrees). *See Schwartz v. Schwartz,* 311 S.C. 303, 307–308, 428 S.E.2d 748, 750–51 (Ct.App.1993); *Marks v. Marks,* 281 S.C. 316, 320–21, 315 S.E.2d 158, 160–61 (Ct.App.1984).

The provisions of the PKPA applicable to the present case are contained in subsection (d) of 28 U.S.C. § 1738A, which deals with continuing jurisdiction and reads as follows:

(d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant.

Subsection (c)(1), mentioned in the quote above, requires that the family court maintain jurisdiction under its own state law. Therefore, "[s]ubsection (d) basically sets forth three criteria, all of which must be met, for a court to retain [continuing] jurisdiction" under the PKPA. *Dahlen v. Dahlen,* 393 N.W.2d 765, 768 (N.D.1986). The three criteria are 1) that the original custody determination was entered consistently with the provisions of the PKPA; 2) that the court maintain jurisdiction under its own state law (in South Carolina, the UCCJA); and 3) that the state remains the residence of the child or of any contestant. *See id.*

In the present case, the first criterion is undisputed. The child and both parties to the action were South Carolina residents at the time of the initial custody decree and, suffice

it to say, the jurisdictional requirements of both the PKPA and the UCCJA were certainly satisfied at that time.

The second requirement, that jurisdiction under South Carolina law be maintained, is a more complex matter. In 1981, South Carolina adopted the UCCJA as its governing law in interstate custody disputes. *See* S.C.Code Ann. §§ 20–7–782 to 830 (1985). The applicable portion of the UCCJA regarding jurisdiction reads as follows:

(a) A court of this State which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(2) it is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this State and (ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships. . . .

S.C.Code Ann. § 20–7–788 (1985).

The purpose of the UCCJA is to prevent conflicting custody decrees between different states. *See Kirylik v. Kirylik,* 292 S.C. 475, 477, 357 S.E.2d 449, 450 (1987). To this end, much deference is given to the jurisdiction of the state that initially rules on a custody matter. "Courts which render a custody decree normally retain continuing jurisdiction to modify the decree under local law." *Knoth v. Knoth,* 297 S.C. 460, 463, 377 S.E.2d 340, 342 (1989). Once a custody decree has been entered, the decree state has exclusive continuing jurisdiction, which is not necessarily affected by a child's residence in another state. *Id.* at 464, 377 S.E.2d at 342–43. Accordingly, the UCCJA's jurisdictional language quoted above has been interpreted broadly when a state seeks to exercise continuing jurisdiction over a pre-existing custody decree. A court may exercise continuing jurisdiction under this subsection when "there are sufficient contacts with the child and his parent(s) to justify legitimate state interest in the outcome of the dispute, and if sufficient evidence is available to enable the court to make a fair determination of custody based upon the best interest of the child." *Cullen v. Prescott,* 302 S.C. 201, 206, 394 S.E.2d 722, 725 (Ct.App.1990).

Pursuant to the broad deference given to the state that initially enters a custody decree, we conclude South Carolina properly asserted continuing jurisdiction under the UCCJA in the present matter. South Carolina issued the original decree and Mother's last known address at the time Father filed for emergency relief was in this state. Mother stipulated in her counterclaim, filed soon after the emergency change in custody and before any issue as to the court's subject matter jurisdiction arose, that she was a resident of South Carolina. *See* 24A Am. Jur. 2d *Divorce and Separation* § 984 (2004) (stating that a party accepts a state's jurisdiction under the UCCJA by bringing a modification action in that state). Both Mother and the child's maternal grandmother made continual assertions to Father that the grandmother's South Carolina home was the proper address at which to contact the child at the time Father filed his complaint. Furthermore, no other state sought to exercise jurisdiction in this matter; thus there are no conflicting orders from different states, the problem the UCCJA was established to remedy. Accordingly, we find sufficient contacts between the child, Mother, and South Carolina to justify this state's interest in the outcome of the dispute. Although Mother had significant contacts with North Carolina, Father presented sufficient evidence for the South Carolina family court to fairly render a judgment regarding the child's custody. Because we find that the South Carolina family court had continuing jurisdiction under the UCCJA, the PKPA's second requirement for continuing jurisdiction is satisfied.

It is the PKPA's third requirement for continuing jurisdiction, however, that is by far the most contested issue in this case. Unlike the UCCJA, the PKPA expressly states that at least the child or one of the contestants must remain a resident of the decree state for that state to properly exercise continuing jurisdiction.[4] Mother contends that because, at the time of filing, Father was a resident of Illinois and she and the child were in North Carolina, where the pair had lived sporadically since 1998, the South Carolina family court lacked

---

4. As previously stated, when the provisions of the PKPA and the UCCJA conflict, the PKPA controls under the Supremacy Clause of the United States Constitution. *See Schwartz,* 311 S.C. at 307–308, 428 S.E.2d at 750–51.

subject matter jurisdiction to order an emergency change in custody. Again, we disagree.

Throughout the PKPA, initial jurisdictional requirements are discussed in terms of the child's "home state." The term "home state" is defined in the statute as "the state in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as parent, for at least six consecutive months. . . ." 28 U.S.C. § 1738A(b)(4) (1988). This language provides a court with clear standards governing its jurisdiction over a custody dispute in which there is no previous custody decree. Such is not the case when courts seek to assert continuing jurisdiction over a pre-existing custody decree. Rather than employing the expressly defined term of "home state" that is used throughout the statute, the PKPA sets forth a requirement of "residence," a term left undefined in the statute, when discussing a court's continuing jurisdiction over custody matters. Because "residence" is not defined in the statute, the determination of whether a decree state has lost its continuing jurisdiction generally turns on the question of the parties' or child's domicile. *Child Custody: When Does State that Issued Previous Custody Determination Have Continuing Jurisdiction under Uniform Child Custody Jurisdiction Act (UCCJA) or Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A*, 83 A.L.R.4th 742 (2004).

In these matters, domicile is determined by an analysis similar to that required for diversity jurisdiction in federal courts, which involves a determination of intent. *Id.* "Domicile is the place of one's true, fixed, and permanent home and principal establishment, to which one has the intention of returning after an absence therefrom." 32A Am. Jur. 2d *Federal Courts* § 746 (2004). "The question of a person's place of residence is largely one of intent to be determined under the facts and circumstances of each case. The act and intent as to domicile, not the duration of the residence, are the determining factors." *Ferguson v. Employers Mut. Cas. Co.* 254 S.C. 235, 238–39, 174 S.E.2d 768, 769 (1970). Generally speaking, a determination of residence or domicile by a trial court will not be overturned on appeal unless there is no

evidence to support it. *See King v. Moore*, 224 S.C. 400, 404, 79 S.E.2d 460, 462 (1953).

In the present case, the question of Mother and child's residence is muddled at best. However, for many of the same reasons asserted in the UCCJA analysis above, we conclude Mother was a resident of South Carolina at the time Father filed his complaint. Mother first raised the issue of residency over a year after the case's commencement. At that point, the family court needed only to look to Mother's prior pleadings, filed shortly after the emergency change in custody, for her own assertions that she was "a resident of Charleston County, South Carolina where she has lived for over one (1) year;" thus, she stated, the family court had "jurisdiction of this matter by virtue of its continuing and exclusive jurisdiction." [5] Although Mother and child were actually staying in a North Carolina shelter at the time, Mother and the maternal grandmother made several assertions to Father that they intended the grandmother's South Carolina home to be the address through which to contact her. The most recent contact with the Mother and child, a safety check performed by local police, confirmed that the pair was living in South Carolina. Though this is a difficult issue, there is certainly evidence in the record supporting the conclusion that Mother intended South Carolina to be her state of residency at the time the emergency action was filed. *See I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 418, 526 S.E.2d 716, 722 (2000) ("[An] appellate court may affirm any ruling, order, or judgment upon any ground(s) appearing in the Record on Appeal.") (quoting Rule 220(c), SCACR).

Moreover, several state courts have applied the doctrine of unclean hands to jurisdiction under the PKPA and UCCJA. *See, e.g., Sams v. Boston*, 181 W.Va. 706, 384 S.E.2d 151, 159–62 (1989). Because the purpose of the acts is to deter the unlawful removal of children to other jurisdictions, courts have

---

5. Although Mother's attorney filed these pleadings without her signature, a party is generally bound by stipulations made by their counsel. *See Sadighi v. Daghighfekr*, 66 F.Supp.2d 752, 761 (D.S.C.1999) (citing *Hall v. Benefit Ass'n of Ry. Employees*, 164 S.C. 80, 83, 161 S.E. 867, 868 (1932)) ("The parties to a suit are bound by admissions, made by their attorneys of record, in open court, or elsewhere, touching matters looking to the progress of the trial.").

held that a decree state remains the "home state" for purposes of the PKPA and the UCCJA for a reasonable period of time when the child has been concealed in another state by one of the parents. *See, e.g., id.* We see no reason not to apply a similar analysis to the determination of "residency" under the PKPA. The original custody order required Mother to provide 60 day's notice before taking the child out of the jurisdiction. The record indicates that no such notice was provided; therefore, the child's location out of state at the time of filing directly violated a South Carolina court order. Because Mother's behavior closely resembles the conduct the act was intended to prevent, we will not consider her sudden move to North Carolina on the eve of filing, without notice to Father, a change of residence under the PKPA.

Because we conclude Mother was a resident of South Carolina at the time Father filed his complaint, the PKPA's third requirement for continuing jurisdiction is satisfied. The South Carolina family court, therefore, had jurisdiction to order the emergency change in custody.

## III. Attorney's Fees

Mother next argues the family court erred in awarding attorney's fees in that it failed to consider her financial condition in determining the award. We disagree.

An award of attorney's fees is within the sound discretion of the family court and will not be disturbed on appeal absent an abuse of discretion. *See Bowen v. Bowen,* 327 S.C. 561, 563, 490 S.E.2d 271, 272 (Ct.App.1997). In determining whether to award attorney's fees, the family court should consider each party's ability to pay his or her own fees, the beneficial results obtained, the parties' respective financial conditions, and the effect of the fee on the parties' standard of living. *E.D.M. v. T.A.M.,* 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992). In determining a reasonable amount of attorney's fees to award, the court should consider the nature, extent, and difficulty of the services rendered, the time necessarily devoted to the case, counsel's professional standing, the contingency of compensation, the beneficial results obtained, and the customary legal fees for similar services. *Glasscock v. Glasscock,* 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).

The family court is required to make an independent evaluation of each of the *Glasscock* factors. *Jackson v. Speed,* 326 S.C. 289, 308, 486 S.E.2d 750, 760 (1997). If it does so, the family court's award will be affirmed as long as there is sufficient evidence in the record supporting each factor. *Id.*

The family court expressly considered each of the *Glasscock* factors. It specifically found, in reviewing Mother's motion to reconsider, that she failed to provide the court with evidence of her financial situation on the issue of attorney's fees. Thus, we find no abuse of discretion in the award. *See Henggeler v. Hanson,* 333 S.C. 598, 605, 510 S.E.2d 722, 726 (Ct.App.1998) (finding no abuse of discretion in awarding attorney's fees when the family court considered the *Glasscock* factors).

For the foregoing reasons, the family court's denial of Mother's motion is

**AFFIRMED.**

ANDERSON, and STILWELL, JJ., concur.