Tiffany Hebert O'GWYNN and Kaileigh Hebert O'Gwynn, a Minor

v.

Stephen Anthony HEBERT.

Appeal of: Tiffany Hebert O'Gwynn.

Stephen Hebert

v.

Tiffany Hebert O'Gywnn, Appellant.

Superior Court of Pennsylvania.

Argued April 26, 2005.
Filed June 21, 2005.

Edward J. Morris, Blue Bell, for appellant.

Stephen A. Hebert, appellee, Pro Se. (no brief filed)

BEFORE: LALLY–GREEN, PANELLA, JJ., and McEWEN, P.J.E.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellant, Tiffany Hebert O'Gwynn, appeals from the trial court's August 6, 2004 order declining jurisdiction. We affirm.

¶ 2 The trial court recited the following facts and procedural history:

The parties were married March 24, 2002 and resided in Lafayette County, Louisiana where their only child, a daughter, Kaileigh, was born on April 18, 2004. Father is employed as an anchorman for Delmar Systems and his job requires that he go off shore for periods of time to set up oil drilling platforms in the Gulf of Mexico. On June 27, 2004 Father went off shore and when he returned to their home on July 6, 2004 Mother and Kaileigh were gone and there was no information as to their whereabouts.

On July 4, 2004 Mother took their child, went to Philadelphia and moved into an apartment rented by her sister. On July 9, 2004 Mother filed a Protection From Abuse Petition against Father alleging that Father had physically and sexually abused her at their home in Louisiana. On that same date the Honorable Edward Summers issued a Temporary Ex–Parte Order prohibiting Father from any contact with Mother or their child, granting Mother temporary custody of the child and setting the matter for a final hearing on July 15, 2004. On July 15, 2004 the case was continued for service on Father and was rescheduled to August 31, 2004.

On July 9, 2004 Mother also filed a Protection from Abuse Petition against Father on behalf of their daughter, Kaileigh, alleging that he physically and sexually abused Kaileigh in Louisiana from the time she was four days old. On that same date Judge Summers issued a Temporary Ex–Parte Order prohibiting Father from any contact with Kaileigh and setting the matter for a final hearing on July 15, 2004. On July 15, 2004 the case was continued for service on Father and was rescheduled to August 31, 2004.

On July 16, 2004 Father filed a Petition for Divorce and Request for Temporary Custody of their child in Lafayette County, Louisiana under Docket No. 2004–3510 H2. On that same date Father received an Ex–Parte Order for Temporary Custody from the Court in Louisiana. On July 19, 2004 Father, believing Mother and child were in Philadelphia, came to Philadelphia to register the Temporary Custody Order from Louisiana. While registering the Louisiana Order Father was advised of the Protection From Abuse Petitions filed by Mother and on July 20, 2004 a member of the Clerk's Office in Philadelphia's Family Court served Father with copies of the Petitions and Temporary Orders issued by Judge Summers.

On July 21, 2004 Father filed a Request for an Expedited Hearing on his Petition to Vacate the Temporary Orders entered by Judge Summers. On July 22, 2004 Judge Summers granted a Rule to Show Cause and scheduled a hearing on Father's Petition for July 27, 2004. On July 27, 2004 Judge Summers held a hearing on the Abuse Petition filed by Mother against Father. On that date Judge Summers issued a Final Order granting Mother "Protection Only—no eviction." There is no provision regarding custody in this Order which is to expire in eighteen (18) months on January 26, 2006. In addition, on July 27, 2004 Judge Summers transferred the Abuse Petition filed by Mother on behalf of Kaileigh to this court, as Supervising Judge of Domestic Relations, to assign a trial judge to hear the issues of abuse and custody under Consolidated Case Management.

After reviewing the record in this matter and Father's Petition for an Expedited Hearing which sought, inter alia, to have jurisdiction regarding all custody issues transferred to Louisiana, this court contacted Judge Blanchet of Lafayette County, Louisiana to discuss jurisdiction with regard to the custody dispute between the parties. As a result of that discussion this court entered on Order on August 6, 2004 in which Pennsylvania declined jurisdiction and it was directed that all custody matters were to be heard in Louisiana under an already existing case. In addition, any custody order which was entered under the abuse petitions filed by Mother was to be vacated and the matter referred to Louisiana.

Trial Court Opinion, 10/29/04, at 2–4.

¶ 3 Appellant raises the following issues for our review:

1. Whether the Lower Court abused its discretion by declining jurisdiction in Pennsylvania and referred [sic] Appellant's case to the State of Louisiana?

2. Whether the Lower Court erred in the interpretation and application of the Uniform Child Custody Jurisdiction Act?

3. Whether the Lower Court abused its discretion and erred by failing to consider or apply the statutory provisions of the Pennsylvania Protection from Abuse Act?

4. Whether the Lower Court abused its discretion in not ordering an evidentiary hearing on the Protection From Abuse Petition filed on behalf of the minor child, Kaileigh Herbert [Hebert] O'Gwynn?

5. Whether the Lower Court abused its discretion and erred in its determination that the temporary ex-parte custody order of the minor child entered by Judge Summers on July 9, 2004 minor child's Abuse Petition No. 0407V7125, was terminated on July 27, 2004 when Judge Summers entered a final order

only on behalf of Mother's Abuse Petition No. 0407V7124.

Appellant's Brief at 3.[1]

¶ 4 In the instant matter, the trial court entered a temporary *ex parte* protection from abuse order on July 9, 2004, in favor of Appellant. A Louisiana Court entered an *ex parte* temporary custody order in favor of Father on July 15, 2004. On August 6, 2004, the Pennsylvania trial court vacated its order and declined jurisdiction, concluding that jurisdiction properly lies in Louisiana. We, therefore, must determine whether the trial court properly declined jurisdiction.

¶ 5 In determining whether jurisdiction lies in Pennsylvania, we are to consider two statutes. They are the Uniform Child Custody Jurisdiction Act, 23 Pa. C.S.A. §§ 5341–5366,[2] and the Parental Kidnapping Protection Act, 28 U.S.C.A. § 1738A. Our Supreme Court addressed the application of these two statutes in *In re Adoption of N.M.B.*, 564 Pa. 117, 764 A.2d 1042 (2000). According to the Court, "the UCCJA and the PKPA were enacted to avoid jurisdictional conflicts that existed between and among States regarding child custody matters." *Id.* at 1045, *citing, Thompson v. Thompson,* 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988). Prior to the enactment of these statutes, "the state of the law provided an incentive for a parent who lost, or anticipated losing, a custody battle in one State to abduct the child to another State in the hopes of getting a better result." *Id.* Congress enacted the PKPA "to provide for nation-wide enforcement of custody orders made in accordance with the terms of the UCCJA." *Id., quoting, Thompson,* 484 U.S. at 181, 108 S.Ct. 513.

¶ 6 Our Supreme Court has set forth the proper analysis for cases like Appellant's case:

Before the courts of this Commonwealth may assert jurisdiction over a child custody or visitation matter with interstate dimensions, the courts must engage in a multi-step analysis. First, the Pennsylvania court must decide whether the matter before it acts as a modification to a custody or visitation order of another State that was rendered "consistently with the provisions" of the PKPA. 28 U.S.C.A. § 1738A(a). Assuming these conditions are met, the PKPA requires that then the Pennsylvania court must look to whether it could, absent the out-of-state proceeding assert appropriate jurisdiction. 28 U.S.C.A. § 1738A(f)(1).

*Kriebel v. Kriebel,* 571 Pa. 356, 812 A.2d 579, 583 (2002).

¶ 7 We note that neither the parties nor the trial court raised the PKPA. In light of our Supreme Court's direction in *Kriebel,* we believe we are obligated to address the PKPA along with the UCCJA in this matter.

¶ 8 The PKPA provides in relevant part as follows:

**§ 1738A. Full faith and credit given to child custody determinations.**

---

1. Appellant preserved these issues in a timely filed Concise Statement of Matters Complained of on Appeal. Pa.R.A.P. 1925(b).

2. We note that §§ 5341–5366 were repealed by 2004, June 15, P.L. 236, No. 39, § 2, effective Aug. 16, 2004. The current version of the UCCJA is codified at 23 Pa.C.S.A. §§ 5401–5482. Section 5 of 2004, June 15,

P.L. 236 provides that "[a] proceeding under 23 Pa.C.S. Ch. 53 which was commenced before the effective date of this act is governed by the law in effect at the time the proceeding was initiated." Since the instant action was commenced prior to August 16, 2004, we apply the former version of the UCCJA.

**(a)** The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsections (f), (g), and (h) of this section, any custody determination or visitation determination made consistently with the provisions of this section by a court of another State.

. . .

**(c)** A child custody or visitation determination made by a court of a State is consistent with the provisions of this section only if—

(1) such court has jurisdiction under the law of such State; and

(2) one of the following conditions is met:

(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;

. . .

**(f)** A court of a State may modify a determination of the custody of the same child made by a court of another State, if—

(1) it has jurisdiction to make such a child custody determination; and

(2) the court of the other State no longer has jurisdiction, or it has de-

clined to exercise such jurisdiction to modify such determination.

28 U.S.C.A. § 1738A.

¶ 9 The record reflects that Louisiana had been the child's home state within weeks before the filing of any petition. The child was in Louisiana until late June 2004. The date of Mother's petition for protection from abuse, filed in Pennsylvania, is July 9, 2004. Also, the date of Father's request for Temporary Custody, filed in Louisiana, is July 16, 2004.

¶ 10 The requirements of § 1738A(c)(1) are met because there is no dispute that Louisiana has jurisdiction under Louisiana law. The requirements of § 1738A(c)(2)(A) are also met. Louisiana had been the home state of the child within six months before the commencement of the custody proceedings. The child was absent from Louisiana because of removal by a contestant, Wife, and a contestant, Husband, still lives in Louisiana.

¶ 11 Next, we examine whether the requirements of 28 U.S.C.A. § 1738A(f) allow Pennsylvania to exercise jurisdiction and modify the custody determination of the Louisiana court. A Pennsylvania court may exercise jurisdiction only if it has jurisdiction to make a custody determination and Louisiana no longer has jurisdiction or has declined its jurisdiction. 28 U.S.C.A. § 1738A(f). The record reflects that, pursuant to a communication between the Pennsylvania and Louisiana trial courts,[3] Louisiana has not declined jurisdiction. Thus, since the requirements of 28 U.S.C.A. § 1738A(f) were not met, the trial court properly refused to modify the Louisiana court's custody determination.

■ ¶ 12 Next, we review the trial court's decision to decline jurisdiction un-

---

**3.** Communication between the courts is appropriate under the UCCJA in the event of simultaneous proceedings in two states. 23

Pa.C.S.A. § 5347. The PKPA does not address direct communication between the courts.

der the UCCJA. Our review is for abuse of discretion. *Merman v. Merman,* 412 Pa.Super. 247, 603 A.2d 201, 203 (1992).

¶ 13 The UCCJA reads in relevant part as follows:

### § 5344. Jurisdiction

(a) General rule.—A court of this Commonwealth which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) this Commonwealth

(i) is the home state of the child at the time of commencement of the proceeding; or

(ii) had been the home state of the child within six months before commencement of the proceeding and the child is absent from this Commonwealth because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this Commonwealth;

(2) it is in the best interest of the child that a court of this Commonwealth assume jurisdiction because:

(i) the child has and his parents, or the child and at least one contestant, have a significant connection with this Commonwealth; and

(ii) there is available in this Commonwealth substantial evidence concerning the present or future care, protection, training and personal relationships of the child;

(3) the child is physically present in this Commonwealth, and:

(i) the child has been abandoned; or

(ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent;

(4) (i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (1), (2) or (3), or another state has declined to exercise jurisdiction on the ground that this Commonwealth is the more appropriate forum to determine the custody of the child; and

(ii) it is in the best interest of the child that the court assume jurisdiction; or

(5) the child welfare agencies of the counties wherein the contestants for the child live, have made an investigation of the home of the person to whom custody is awarded and have found it to be satisfactory for the welfare of the child.

23 Pa.C.S.A. § 5344.

¶ 14 The record did not reflect, and Appellant does not argue, that Pennsylvania is the child's home state or that the child has any significant connection with Pennsylvania or that substantial evidence regarding this matter is available in Pennsylvania. The record reflects that Louisiana is the child's home state and that the evidence pertinent to this matter is in that state.

¶ 15 Appellant does, however, argue the emergency exception found in 23 Pa.C.S.A. § 5344(a)(3)(ii), which permits a trial court to exercise jurisdiction where it is necessary in an emergency to protect the child. The official comment to § 5344 provides that application of § 5344(a)(3) is to be reserved for "extraordinary circumstances." 23 Pa.C.S.A. § 5344, comment. Our research has uncovered no Pennsylvania case law addressing § 5344(a)(3)(ii).

¶ 16 The official comment regarding § 5344(a)(3) provides as follows:

Paragraph (3) of subsection (a) retains and reaffirms parens patriae jurisdiction, usually exercised by a juvenile court, which a state must assume when a child is in a situation requiring immediate protection. This jurisdiction exists when a child has been abandoned and in emergency cases of child neglect. Presence of the child in the state is the only prerequisite. This extraordinary jurisdiction is reserved for extraordinary circumstances. *See, Application of Lang,* 9 App.Div.2d, 401, 193 N.Y.S.2d 763 (1959). When there is child neglect without emergency or abandonment, jurisdiction cannot be based on this paragraph.

23 Pa.C.S.A. § 5344, Uniform Law Comments.

¶ 17 Our legislature has provided additional guidance in the statement of purposes set forth in § 5342(a):

(a) **Purposes.**—The general purposes of this subchapter are to:

(1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being.

(2) Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child.

(3) Assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training and personal relationships is most readily available, and that courts of this Commonwealth decline the exercise of jurisdiction when the child and his family have a closer connection with another state.

. . .

(5) Deter abductions and other unilateral removals of children undertaken to obtain custody awards.

23 Pa.C.S.A § 5342(a).

¶ 18 Thus, our legislature has explicitly informed us that the UCCJA is meant to assure litigation of custody disputes in the state with which the child and his family have the greatest connection, and to deter unilateral removal from that state by one of the parents.

■ ¶ 19 In accordance with the above, other states' courts have construed the UCCJA's emergency jurisdiction provision narrowly. Courts will exercise emergency jurisdiction if there is an *immediate* need for protection of the child. *See, e.g., McDow v. McDow,* 908 P.2d 1049, 1051, n. 2 (Alaska 1996) ("Assumption of emergency jurisdiction is an assumption of temporary jurisdiction only; it is meant solely to prevent irreparable and immediate harm to children and absent satisfaction of other UCCJA jurisdictional prerequisites, does not confer upon the state exercising emergency jurisdiction the authority to make a permanent custody disposition.") (citation omitted); *In re J.R.W.,* 667 So.2d 74, 79–80 (Ala.1994) ("[Courts] have narrowly construed emergency jurisdiction under the UCCJA to be temporary and to be limited to extraordinary circumstances involving substantial and imminent harm to a child."); *In re D.S.K.,* 792 P.2d 118, 127 (Utah Ct.App.1990) ("Where a grave emergency exists affecting the immediate needs and welfare of the child, a Utah court may enter appropriate orders for the protection of the child present in Utah even if its orders contravene those of a sister state that still retains jurisdiction over custody."); *In re Vanessa E.,* 190 A.D.2d 134,

597 N.Y.S.2d 672, 674 (N.Y.App.Div.1993) ("[UCCJA] provides for the exercise of jurisdiction in an emergency situation 'vitally and directly' affecting the health, welfare and safety of the subject child. A primary consideration for jurisdiction is whether a return home to the jurisdiction would place the child in imminent risk of harm.") (citation omitted); *In re Lang*, 9 A.D.2d 401, 193 N.Y.S.2d 763, 768 (1959) ("[Emergency jurisdiction] is still a subordinate jurisdiction to be exercised only where necessary to protect the child from what is by our standards an obvious danger, injury, hardship or ill-treatment.").

¶ 20 In light of the stated purposes underlying the UCCJA and the official comment to § 5344, we conclude that emergency jurisdiction under the UCCJA must be reserved for situations in which the child is in immediate danger of suffering harm.[4] As is evident from the foregoing discussion, our approach is in accord with that of other states that have addressed this issue. A narrow construction of § 5344 emergency jurisdiction is necessary in order to prevent forum shopping in accordance with § 5342(a)(1). Limited emergency jurisdiction will also help to ensure that the litigation will take place in the jurisdiction with the greatest connection to the child.

¶ 21 Appellant claims she fled Louisiana because her husband was abusive to her and to her newborn child. N.T., 7/27/04, at 8–13. Appellant moved to Philadelphia to live with her sisters. *Id.* at 13. Father has denied these allegations and maintains that the marriage was a happy one. *Id.* at

43–44. He further claims that he was shocked that Appellant took the child and left him. *Id.* at 44–45. The record reflects that Father's work as an anchorman on oil rigs required him to be away from home for as much as three weeks at a time. *Id.* at 15, 39. Father was away from home when Appellant took the child to Philadelphia. *Id.* at 16.

¶ 22 On this record, the trial court was within its discretion in finding that emergency jurisdiction under the UCCJA was unwarranted. The testimony as to the treatment of the child is conflicting, and the record clearly reflects that Father was away at sea for long periods of time during which Appellant could have filed an appropriate action in the Louisiana courts. We are cognizant that in some instances, a mother who feels threatened by her spouse will be reluctant to initiate court proceedings in her home state, especially while still living with her husband. Nonetheless, absent an immediate threat of harm to a child, the UCCJA does not permit a parent to take a child and flee the child's home jurisdiction. The record in the instant matter simply does not reflect that Appellant's child was in danger of immediate harm.[5] Accordingly, we affirm the trial court's order.

¶ 23 Order affirmed.

---

**4.** We note that 23 Pa.C.S.A. § 5424—the emergency jurisdiction provision of the current version of the UCCJA—is similar to § 5344(a)(3). Section 5424 reads as follows: A Court of this Commonwealth has temporary emergency jurisdiction if the child is present in this Commonwealth and the child has been abandoned or it is necessary

in an emergency to protect the child because the child or a sibling or parent of the child is subjected to or threatened with mistreatment or abuse. 23 Pa.C.S.A. § 5424(a).

**5.** In light of our conclusion, we need not address Appellant's remaining issues.