J-A09009-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| M.G., on behalf of herself and B.A.S., Jr. and R.B.A.S., minor children | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| B.S., SR. | : | |
| | : | No. 1430 WDA 2024 |
| Appellant | | |

Appeal from the Order Entered October 24, 2024
In the Court of Common Pleas of Venango County Civil Division at No(s):
648 CIV 2024

BEFORE:  KUNSELMAN, J., NICHOLS, J., and LANE, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED: JULY 16, 2025**

B.S., Sr. (Father) appeals from the order, issued by the Venango County Court of Common Pleas, granting a petition for a final Protection From Abuse (PFA) order in favor of his minor children and against him.  **See** 23 Pa.C.S.A. §§ 6101-6122.  M.G. (Mother) brought the PFA petition on behalf of herself and the parties' two sons, then 6-year-old B.A.S., Jr. and then 4-year-old R.B.A.S. (collectively, the Children), alleging that Father abused the Children. The final PFA order was entered only on behalf of the Children, and granted temporary primary physical custody of them to Mother.[1]  Father was not granted any physical custody rights but was permitted to have contact with the Children by telephone or video.  Father argues that the trial court lacked

---

[1] The court did not grant the PFA on behalf of Mother, in her individual capacity.

subject matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) to enter the order.  *See* 23 Pa.C.S.A. §§ 5401-5482.  After review, we affirm.

In the order on appeal, the trial court provided the following factual and procedural background:

> A PFA action was instituted by [] Mother in Venango County, Pennsylvania, on behalf of her two minor [C]hildren.  It is not disputed that at the time of the filing of the PFA action, the [C]hildren had been residing for the majority of the time with [] Father in South Carolina, and had been doing so since May of 2022.  The [C]hildren were temporarily in the custody of Mother at the time Mother filed the instant PFA action.

> It is also not disputed that there was no prior "custody" order in effect in either Pennsylvania or South Carolina.  The [C]hildren had been placed in Father's custody as a result of dependency proceedings in Venango County, Pennsylvania which concluded with the [c]ourt ordering reunification of the [C]hildren with Father in South Carolina.

> While the [C]hildren were in the custody of Mother for a summer vacation, she heard from her [C]hildren about several practices of corporal punishment engaged in by Father which led to her taking the steps to file the instant PFA action.  At the final hearing, which was a protracted hearing held on August 16, 2024, Father, represented by counsel, attended the hearing by video conferencing with the approval of the [c]ourt, and defended the action against him.

> At the hearing, it became clear that all of the alleged acts of abuse to the [C]hildren complained of occurred in South Carolina, while in Father's custody in South Carolina.  [The trial court] do[es] not recall Father contesting personal jurisdiction either prior to or at the hearing.  However, [the trial court] became concerned in the middle of the hearing that [it] may not have "jurisdiction" because Father was

- 2 -

living in South Carolina and all of the acts complained of occurred in South Carolina.

At the conclusion of the hearing, [the trial court] decided that [it] had jurisdiction, and entered a final PFA order which included an award of sole physical and legal custody of the [C]hildren to Mother. [The trial court] dictated a statement of reasons for [its] decision at the conclusion of the hearing.

On August 21, 2024, Father filed a timely motion to reconsider [the trial court's] final PFA order, questioning [its] finding that [it] had jurisdiction to enter the order. On August 30, 2024, Mother filed a response to the motion. [The trial court] granted Father's request for reconsideration by order dated September 9, 2024. On September 19, 2024, Mother filed an amended response to the motion, which included a motion to amend [the trial court's] final order to state that Pennsylvania was the "home state" of the [C]hildren for custody purposes.

Trial Court Order, 10/24/24, at 2-3.

After reconsideration, the trial court denied Father's request to dismiss the PFA action for lack of jurisdiction, and the final PFA order remained in place. Father timely filed this appeal.[2] He presents the following issue for our review:

_____

[2] After reconsideration, the trial court entered the October 24, 2024 order on appeal that effectively reaffirmed the August 16, 2024 final PFA order and denied Father's request to modify or dismiss the final PFA order. **See** Pa.R.A.P. 1701(b)(3) ("Where a timely order of reconsideration is entered . . ., the time for filing a notice of appeal . . . begins to run anew after the entry of the decision on reconsideration, whether or not that decision amounts to a reaffirmation of the prior determination of the trial court . . . ."). Father appealed the October 24, 2024 order on November 18, 2024. **See** Pa.R.A.P. 903(a) ("Except as otherwise prescribed by this rule, the notice of appeal . . . shall be filed within 30 days after the entry of the order from which the appeal is taken."). Thus, Father's appeal was timely.

> 1. Did the trial court err in finding it had jurisdiction to enter a PFA order granting custody of minor children who resided in another state?

Father's Brief at 1.

The record and briefs in this case reveal that the parties and the trial court disagree over which statute, the PFA Act or the UCCJEA, governs the trial court's jurisdiction to enter the final PFA order. Thus, we first clarify the applicable law.

On appeal, Father argues that "[w]hile Pennsylvania courts have jurisdiction to enter PFA orders generally under 23 Pa.C.S. § 6103 [the PFA Act], their ability to make child custody determinations is limited by the UCCJEA." Father's Brief at 5. Conversely, Mother asserts that "23 Pa[.] C.S.A. § 6103[] is the controlling, jurisdictional language [in] this case. While there is an element of custody to this case, the main purpose of the filing is to protect the [C]hildren from their abuser. The relevant jurisdictional language can be found within the [PFA] statute . . . ." Mother's Brief at 7.

The trial court provided the following rationale for its decision regarding jurisdiction:

> During the course of the PFA hearing, th[e] [trial] [c]ourt raised the issue of whether [it] had "jurisdiction" over this matter, since all acts complained of occurred in South Carolina, Father was a resident of South Carolina, and the [C]hildren subject to the hearing resided primarily in South Carolina. [The trial court] relied upon the case of *B.T.W. ex rel. T.L. v. P.J.L.*, 956 A.2d. 1014 (Pa. Super. 2008), which, upon similar facts, concluded that Pennsylvania had subject matter jurisdiction over a PFA case. However, [the trial court] expressed [its] concern that the reasoning in that case was based on the existence of a prior custody order

which conferred "home state" jurisdiction in Pennsylvania. In the case at bar, there was no preexisting custody order. There was only a court order in a dependency action which granted reunification of the [C]hildren with Father who was residing in South Carolina.

[The trial court] [is] concerned that the legal analysis set forth in *B.T.W.* is inapplicable to [this] case. [It] prefer[s] to rely on the following reasoning for [its] conclusion that [it] ha[s] jurisdiction over the PFA action. The "gist" of the present action is a proceeding pursuant to the [PFA] Act, not a custody action. In that regard, the PFA Act specifically addresses the issue of jurisdiction for cases brought pursuant to the Act.

[. . .]

It is clear, then, that this statute [the PFA Act] confers subject matter (actions involving protection from abuse) jurisdiction in the Courts of this Commonwealth. Consequently, [the trial court] ha[s] the authority to decide the issues involving the [Mother's] [PFA] action, if the requirements of personal jurisdiction are met.

Trial Court Order, 10/24/24, at 9-10.

The UCCJEA governs interstate custody disputes. Importantly, it provides the following definitions:

**"Child custody determination."** A judgment, decree or other order of a court providing for legal custody, physical custody or visitation with respect to a child. The term includes a permanent, temporary, initial and modification order. The term does not include an order relating to child support or other monetary obligation of an individual.

**"Child custody proceeding."** A proceeding in which legal custody, physical custody or visitation with respect to a child is an issue. The term includes a proceeding for divorce, separation, neglect, abuse, dependency, guardianship, paternity, termination of parental rights and protection from domestic violence, in which the issue may appear. The term does not include a proceeding involving juvenile

- 5 -

delinquency, contractual emancipation or enforcement under Subchapter C (relating to enforcement).

23 Pa.C.S.A. § 5402.

Here, Father resided in South Carolina and Mother resided in Pennsylvania. They are the parents of the Children. The instant PFA proceeding was a child custody proceeding as defined in the UCCJEA because it was a proceeding in which legal custody, physical custody or visitation with respect to a child was an issue. *Id.* The proceeding necessarily involved custody because Mother's PFA petition was on behalf of herself and the Children and alleged that Father abused the Children. Thus, custody of the Children was at issue in the proceeding.

Further, the UCCJEA's definition of a "child custody proceeding" specifically includes a proceeding for abuse and protection from domestic violence, in which the issue of child custody may appear. *Id.*; *see also B.T.W. ex rel. T.L. v. P.J.L.*, 956 A.2d 1014, 1016 (Pa. Super. 2008) ("The PFA petition here placed [stepmother's] custody of [the child] at issue, and indeed resulted in an order depriving [stepmother] of the primary custody awarded her in May of 2006. Thus the hearing on [grandmother's] [PFA] request falls directly under the aegis of the [UCCJEA] statutory definition [of a child custody proceeding], and the court's authority to enter the order under review is clearly established.").

Additionally, the temporary and final PFA orders granted Mother primary physical custody of the Children.[3] Thus, the PFA orders were child custody determinations as defined in the UCCJEA because they were court orders providing for legal custody, physical custody, or visitation with respect to a child. 23 Pa.C.S.A. § 5402. Because Mother and Father resided in different states, and the PFA proceeding involved child custody, the UCCJEA applied to this case. Thus, the trial court needed jurisdiction under the UCCJEA to enter the final PFA order with custody provisions.[4]

_____

[3] We observe that at the end of the hearing, on the record, the trial court granted Mother sole physical custody and "because of the distance between the parties, sole legal custody at this time." N.T., 8/16/24, at 104. However, the final PFA order does not specifically grant Mother sole legal custody but says that Mother "shall keep [Father] advised of all medical appointments, health and welfare, and all school activities that the [C]hildren participate in as well as progress." *See* Final Protection From Abuse Order, 8/16/24, at 2-3.

[4] We clarify that we do not disagree with Mother and the trial court that the PFA Act is also implicated in this case. Indeed, to enter a PFA order, the trial court also needed jurisdiction under the PFA Act. However, Father is not arguing on appeal that the trial court lacked jurisdiction to enter **any** PFA order against him. Instead, he is arguing that, because the final PFA order included custody provisions regarding the Children, the order also implicated the UCCJEA. We agree with Father on this point.

Additionally, the PFA Act clearly provides that a court can grant a plaintiff relief even if the defendant does not reside in the Commonwealth, provided that the court has personal jurisdiction over the defendant. 23 Pa.C.S.A. § 6103(b)(2). We need not analyze personal jurisdiction because that is not being raised by Father on appeal. *See Wagner v. Wagner*, 768 A.2d 1112, 1119 (Pa. 2001) (stating "the failure to file a timely objection to personal jurisdiction constitutes, under the Federal Rules of Civil Procedure and comparable state rules, a waiver of the objection.") (citation omitted).

- 7 -

Having determined that the UCCJEA applies to this matter, we turn to our standard of review. "A trial court's decision that it retains or relinquishes exclusive, continuing jurisdiction over a custody determination pursuant to Section 5422 of the UCCJEA implicates the court's subject matter jurisdiction and is purely a question of law."[5] **Boback v. Pershing**, 311 A.3d 1126, 1129 (Pa. Super. 2024) (citation omitted). "Accordingly, this Court's standard of review is *de novo* and our scope of review is plenary." **Id.** (citation omitted).

"[T]he purpose of the UCCJEA is to avoid jurisdictional competition, promote cooperation between courts, deter the abduction of children, avoid relitigating custody decisions of other states, and facilitate the enforcement of custody orders of other states." **Id**. (citation omitted). The UCCJEA was also enacted to conform state law with the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A, which is a federal law requiring "that states give full faith and credit to another jurisdiction's child custody determination made in compliance with the provisions of the PKPA." **R.M. v. J.S.**, 20 A.3d 496, 502-03 (Pa. Super. 2011); **see also** U.S. Const. Art. IV, § 1.

_____

[5] Although we acknowledge that the trial court did not correctly base its decision that it had jurisdiction on the UCCJEA, and instead ultimately relied on the PFA Act, "[i]f we determine that the trial court ruling is correct, we can affirm on any basis supported by the record." **R.M. v. J.S.**, 20 A.3d 496, 506 n.8 (Pa. Super. 2011) (citation omitted). Further, the central issue in this case presents a question of the trial court's subject matter jurisdiction, which cannot be waived and can be raised by this Court *sua sponte*. **See id.** at 504 n.6 (Pa. Super. 2011) ("[T]his issue presents a question of the trial court's subject matter jurisdiction and thus cannot be waived.") (citation omitted); **see also Boback v. Pershing**, 311 A.3d 1126, 1129 (Pa. Super. 2024) ("[I]t is well-settled that the question of subject matter jurisdiction may be raised at any time, by any party, or by the court *sua sponte*.") (citation omitted).

On appeal, Father argues that the trial court lacked jurisdiction under Section 5421 of the UCCJEA, which provides for initial child custody jurisdiction under several scenarios, including if the Commonwealth is the home state of the Children. *See* 23 Pa.C.S.A. § 5421. Father argues that South Carolina, and not Pennsylvania, was clearly the Children's home state at the time of the PFA proceeding. *See* Father's Brief at 9. Thus, Father asserts that South Carolina would have jurisdiction in this case. *See id.* at 10.

Father's argument fails because home state jurisdiction under Section 5421, although prioritized, is not the only provision of the UCCJEA under which a Pennsylvania court could exercise jurisdiction. Specifically, and relevant to this matter, Section 5422 of the UCCJEA provides:

> **(a) General rule.--**Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction), a court of this Commonwealth which has made a child custody determination consistent with section 5421 (relating to initial child custody jurisdiction) or 5423 (relating to jurisdiction to modify determination) has exclusive, continuing jurisdiction over the determination until:
>
> (1) a court of this Commonwealth determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this Commonwealth and that substantial evidence is no longer available in this Commonwealth concerning the child's care, protection, training and personal relationships[.]

23 Pa.C.S.A. § 5422(a)(1).[6]

Contrary to Father's and the trial court's statements, there was a previous child custody determination, as defined by the UCCJEA, regarding the Children in Pennsylvania. Specifically, there was a dependency proceeding in Venango County regarding the Children in 2022. This proceeding falls within the UCCJEA definition of a child custody proceeding because it was a dependency proceeding in which custody of the Children was at issue. *See* 23 Pa.C.S.A. § 5402 (defining "Child custody proceeding" to include a proceeding for dependency in which the issue of child custody may appear). Indeed, the result of the dependency proceeding was that the Venango County court ordered that the Children be reunified with Father in South Carolina.

These orders are present in our certified record because Mother attached them to one of her filings below. *See* Order of Court, 5/13/22 (granting the

_____

[6] Section 5422 provides a second situation when the Pennsylvania court would lose exclusive, continuing jurisdiction – namely, when:

> (2) a court of this Commonwealth or a court of another state determines that the child, the child's parents and any person acting as a parent do not presently reside in this Commonwealth.

23 Pa.C.S.A. § 5422(a)(2).

Section 5422(a)(2) does not apply because Mother is still a resident of Pennsylvania. We have explained, "Section 5422 is written in the disjunctive, and, therefore, [] the trial court [i]s required only to determine whether the child[] fail[s] **one** of the jurisdictional tests set forth in Section 5422(a)[.]" *Boback*, 311 A.3d at 1129 (citation omitted) (emphasis in original). As explained *infra*, this matter turns on Section 5422(a)(1).

Agency's Motion Seeking to Reunify with Father and Terminate Court Supervision and ordering that the Children be released from their respective kinship homes and reunified with Father in South Carolina); Orders for Termination of Court Supervision, 5/16/22 (ordering that the Venango County juvenile court's supervision of the Children was terminated; "[a]ny temporary legal and physical custody by [the] County Children and Youth Services Agency" of the Children was discharged; and finding that the Children were not dependent because they had been reunified with Father).

The 2022 dependency court orders provided for custody of the Children, making those orders child custody determinations, as defined in the UCCJEA. *See* 23 Pa.C.S.A. § 5402 (defining "Child custody determination" to include, in part, an "order of a court providing for legal custody, physical custody or visitation with respect to a child."). Thus, the Venango County court issued the initial child custody determination regarding the Children in 2022, pursuant to the dependency proceeding. *Cf. M.E.V. v. R.D.V.*, 57 A.3d 126, 131 (Pa. Super. 2012) (holding that the trial court abused its discretion in determining that there was no prior custody proceeding in New Jersey because Father had filed a complaint for divorce in New Jersey, which included averments regarding custody. Mother subsequently filed her complaint for custody in Pennsylvania. Thus, the trial court found that "[a]s such, a child custody proceeding, as defined by the [UCCJEA] statute, was commenced in New Jersey prior to the child custody proceeding commencing in Pennsylvania."). Therefore, pursuant to the UCCJEA, Pennsylvania retained

- 11 -

exclusive, continuing jurisdiction over the custody determination until it was divested of jurisdiction. *See* 23 Pa.C.S.A. § 5422(a).

As explained above, this matter turns on whether Pennsylvania was divested of jurisdiction under Section 5422(a)(1). Pennsylvania would lose jurisdiction if Mother and the Children did not retain a significant connection to Pennsylvania after the Children were reunified with Father in South Carolina. The Uniform Law Comment to Section 5422(a)(1) provides guidance regarding a child's significant connection to Pennsylvania:

> If a parent or a person acting as a parent remains in the original decree state, continuing jurisdiction is lost when neither the child, the child and a parent, nor the child and a person acting as a parent continue to have a significant connection with the original decree state **and** there is no longer substantial evidence concerning the child's care, protection, training and personal relations in that state.
>
> In other words, **even if the child has acquired a new home state**, the original decree state retains exclusive, continuing jurisdiction, so long as the general requisites of the "substantial connection" jurisdiction provisions of section 201 (section 5421) are met. If the relationship between the child and the person remaining in the state with exclusive, continuing jurisdiction becomes so attenuated that the court could no longer find significant connections and substantial evidence, jurisdiction would no longer exist.

23 Pa.C.S.A. § 5422 – Uniform Law Comment (emphasis added) (style adjusted).

This Court has further explained how the phrase "significant connection" should be understood:

> We note that the phrase "significant connection" is not defined in the UCCJEA. "Significant" is defined as "having

> meaning" or "important." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 1091 (10th ed. 1997). "Connection" is defined as "the state of being connected," or "a relation of personal intimacy." *Id.* at 245. Therefore, pursuant to the plain and ordinary meaning of the phrase "significant connection," exclusive, continuing jurisdiction is retained under section 5422(a)(1) as long as the child and at least one parent have an important or meaningful relationship to the Commonwealth. Accordingly, we must look at the nature and quality of the child's contacts with the parent living in the Commonwealth.

***Rennie v. Rosenthol***, 995 A.2d 1217, 1221-22 (Pa. Super. 2010) (footnotes omitted).

We note that "[t]he use of the term 'and' requires that exclusive jurisdiction continues in Pennsylvania until both a significant connection to Pennsylvania and the requisite substantial evidence are lacking." ***Id.*** at 1221. Moreover, it does not matter if South Carolina became the Children's home state, so long as the Children still had a "significant connection" to Pennsylvania or substantial evidence is present. Section 5422(a)(1) does not ask which state has a better connection, nor which parent has primary custody. ***See id.*** at 1222 ("The statute does not specify that courts must determine that the parent with primary custody of a child has a significant connection with the state to retain jurisdiction."). The question is whether, following the Children's relocation to South Carolina, the Children and Mother maintained a meaningful relationship to Pennsylvania. If a significant connection with Pennsylvania exists ***or*** substantial evidence is present, Pennsylvania will retain jurisdiction. ***See id.*** at 1221.

Here, as noted, Mother lives in Pennsylvania. When the PFA petition was filed, Mother was exercising parenting time with the Children in Pennsylvania because they went to visit her during summer vacation. *See* N.T., 8/16/24, at 34, 80. We acknowledge that Mother testified that she went to South Carolina, rather than the Children coming to Pennsylvania, for two other visits she had with them during holidays. *See id.* at 34. Father also testified that the visit in the summer of 2024 was the first time that the Children were coming back to Pennsylvania since 2022. *See id.* at 80-81. However, Father testified that he and his girlfriend facilitated video chats and phone calls between Mother and the Children. *See id.* at 87, 89. Mother testified that she had "phone calls here and there" with the Children, but that it was hard to get Father to answer the phone. *See id.* at 35. In Mother's counsel's closing argument, she stated that Mother previously moved to Pennsylvania and brought the Children with her, so the Children had lived in Pennsylvania before. *See id.* at 94. In Mother's brief, she again reiterates that she lived with the Children in Pennsylvania, until approximately two years ago, when she was incarcerated. Mother's Brief at 5. Mother also states that "the [C]hildren, [the older son] in particular, had resided in Pennsylvania for a number of years prior to being moved to South Carolina with their Father." *Id.* at 12.

Further, Venango County Children and Youth Services (CYS) participated in the investigation of the abuse allegations against Father and conducted the forensic interview of one of the Children. *See* N.T. at 12, 14-

- 14 -

15. A child protective services investigator from the Dorchester County Department of Social Services in South Carolina testified to her belief that the Children's pediatrician in Pennsylvania completed drug tests on the Children, in connection with the abuse investigation. *See id.* at 19. The investigator received the results of the drug tests via email "[f]rom the current CYS supervisor involved with [Mother]."[7] *See id.* Mother's counsel also stated that the abuse investigation was open with both Venango County and South Carolina. *See id.* at 21.

CYS had also previously been involved with the Children, as noted above. During closing arguments, the trial court asked about the status of the CYS proceedings that resulted in the Children living with Father. *See id.* at 94. Mother's counsel said that the cases had been closed, which Mother said occurred in "last October" (likely meaning October 2023 because the hearing occurred in 2024). *See id.*

Thus, the above cited evidence supports the conclusion that the Children and Mother maintained a "significant connection" to Pennsylvania and evidence of the Children's care and protection remained in Pennsylvania. Therefore, the trial court maintained exclusive, continuing jurisdiction of the

---

[7] We note that, "when making a determination under [S]ection 5422, the trial court must rely upon the factual circumstances as they existed when the modification petition was filed." *See Boback*, 311 A.3d at 1130 (citation omitted). Thus, evidence of the then-current abuse investigation was relevant to a determination under Section 5422. Additionally, because the Children had previously been reunified with Father and Mother's PFA petition put custody of them at issue, there was, in essence, a custody modification at issue.

custody determination, per the UCCJEA. *See* 23 Pa.C.S.A. § 5422(a)(1); *see also Rennie*, 995 A.2d at 1222 (explaining that "[a]s indicated in clear language in the [UCCJEA] statute, a 'significant connection' will be found where one parent resides and exercises parenting time in the state and maintains a meaningful relationship with the child. The statute does not specify that courts must determine that the parent with primary custody of a child has a significant connection with the state to retain jurisdiction."). Given the facts of this case, *i.e.*, that Mother still lives in Pennsylvania, the Children visited her in Pennsylvania, and she had some video chats and phone calls with them, the relationship between the Children and Mother did not become so attenuated that jurisdiction would no longer exist in Pennsylvania. *See* 23 Pa.C.S.A. § 5422 – Uniform Law Comment ("If the relationship between the child and the person remaining in the state with exclusive, continuing jurisdiction becomes so attenuated that the court could no longer find significant connections and substantial evidence, jurisdiction would no longer exist.").

Additionally, this Court's prior decision in *B.T.W. ex rel. T.L. v. P.J.L.* is instructive. In *B.T.W.*, stepmother and grandmother shared custody of the child pursuant to a custody order entered in Pennsylvania. *See B.T.W.*, 956 A.2d at 1015. Stepmother lived in Maryland and had primary custody. *Id.* Grandmother lived in Pennsylvania and had partial custody. *Id.* Grandmother sought a PFA order in Pennsylvania for the child against stepmother, alleging that stepmother had abused the child in Maryland. *See id.* The trial court

- 16 -

entered the final PFA order. *Id.* Stepmother appealed, and argued, in part, that the trial court lacked subject matter jurisdiction to hear grandmother's petition. *See id.* This Court affirmed the order, concluding, in part, that the trial court had jurisdiction under the UCCJEA, even though the abuse occurred outside of Pennsylvania. *See id.* at 1015-16. This Court stated that "[s]ince [Grandmother], the partial custodian, resided in Pennsylvania, the nexus between [the child], [stepmother], and the Commonwealth remains intact." *Id.* at 1016.

This case is similar to *B.T.W.* because, although there was no prior "custody order" between Mother and Father, the dependency proceeding resulted in a prior custody determination under the UCCJEA, as explained above. The Children were reunified with Father in South Carolina pursuant to that custody determination, but there is no evidence that Mother was not permitted to exercise custody of the Children after she was released from incarceration. Indeed, the Children came to Pennsylvania to visit Mother in the summer of 2024, and Mother went to South Carolina to visit them twice. Thus, similar to the grandmother in *B.T.W.*, Mother exercised parenting time in Pennsylvania, and the Children retained a significant connection to Pennsylvania, as explained above.

Father's reliance on *O'Gwynn v. Hebert* does not persuade us otherwise. In *O'Gwynn*, mother and father resided in Louisiana with their child. *O'Gwynn v. Hebert*, 878 A.2d 119, 120 (Pa. Super. 2005). While father was working offshore, mother took the child, went to Philadelphia, and

- 17 -

filed PFA petitions against father on behalf of herself and the child. *See id.* The Pennsylvania trial court entered temporary *ex parte* PFA orders. A week later, and before the Pennsylvania trial court held the final hearing on the PFA petitions, father filed a petition for divorce and a request for temporary custody of the child in Louisiana. *See id.* at 121. The Louisiana court entered an *ex parte* temporary custody order in favor of father. Father was later served with mother's petitions. *See id.* Father sought to have jurisdiction regarding all custody issues transferred to Louisiana. *See id.* The Pennsylvania court contacted the Louisiana court to discuss jurisdiction. *See id.* Pennsylvania ultimately vacated its orders, declined jurisdiction, and directed that all custody matters be heard in Louisiana. *See id.*

On appeal, this Court affirmed, citing the PKPA's[8] requirement of giving full faith and credit to child custody determinations of another state, if certain requirements are met. *See id.* at 122-23. This Court noted that Louisiana had been the child's home state within weeks of the filing of any petition, and Louisiana had jurisdiction under Louisiana law. *See id.* at 123. Thus, the Pennsylvania court properly refused to modify the Louisiana court's custody determination under the PKPA because Louisiana had not declined jurisdiction. *See id.*

Under the predecessor statute to the UCCJEA, this Court determined that Pennsylvania was not the child's home state, the child had no significant

---

[8] Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A, discussed *supra*.

connection with Pennsylvania, and there was not substantial evidence regarding the matter in Pennsylvania. *See id.* at 124. Further, the trial court was within its discretion in finding that emergency jurisdiction was unwarranted because the child was not in danger of immediate harm. *See id.* at 126.

*O'Gwynn* is distinguishable from the instant matter. Here, as noted above, there were no simultaneous custody proceedings occurring in Pennsylvania and South Carolina. At that time, the only proceeding was the PFA proceeding in Pennsylvania. Further, Mother and the Children have a significant connection to Pennsylvania, and Mother currently resides here, unlike the mother and child in *O'Gwynn* who had no connection to Pennsylvania. Also, the Children went to visit Mother in Pennsylvania; Mother did not take the Children from one state and flee to Pennsylvania, as in *O'Gwynn*. Thus, we disagree with Father that *O'Gwynn* controls our decision in this case.

Lastly, although Father argues that South Carolina has jurisdiction in this case, there is no evidence that he filed a custody action in South Carolina. The record reflects that during the PFA hearing, the trial court asked if there was a custody order in effect at that time. *See* N.T. at 46. At first, Father's counsel indicated that counsel thought there was a custody order. *See id.* at 47. Mother said that there was no custody order; the parties never had a custody agreement; and the only orders were related to the dependency. *See id.* Further, Father's counsel then stated that "[t]hey reported to me that

there was prior litigation with this—with other counsel as to that point [custody]" in Venango County. *See id.* Father's counsel then conceded that counsel "suppose[d]" it was "possible" that Father mistook the CYS proceedings with custody proceedings. *See id.* Another individual, who appears from the transcript to be a trial court employee, then clarified that she was under the belief that there was a custody order but there was not. *See id.*

In its order, the trial court stated that "[i]t is also not disputed that there was no prior 'custody' order in effect in either Pennsylvania or South Carolina." Trial Court Order, 10/24/24, at 2. Mother noted multiple times in her brief that Father has not initiated a custody action in South Carolina. *See* Mother's Brief at 9 ("Nothing stopped Father from pursuing custody in South Carolina following the entry of the Final PFA Order, and he has failed to do so."); *Id.* at 10 ("[N]o formal custody action has commenced inside or outside the Commonwealth."); *Id.* at 11 ("[Father] has not, to date, filed a custody proceeding."); *Id.* ("[T]here is no pending custody litigation in South Carolina, to []Mother's knowledge.").

Additionally, at the end of the hearing, the trial court advised both Mother and Father that they "should probably seek the services of attorneys . . . for the purpose of filing a custody action or pursuing a custody agreement" between the two of them. N.T. at 107. However, Father does not indicate in his brief that he has filed a custody action in South Carolina. Thus, although the trial court could relinquish jurisdiction to South Carolina, if proper, or

eventually be divested of jurisdiction under the UCCJEA, as far as the record shows, no court in South Carolina has a custody case regarding the parties. Father's challenge to subject matter jurisdiction merits no relief.

In sum, the trial court maintained exclusive, continuing jurisdiction over the Children's custody under Section 5422 of the UCCJEA, pursuant to the 2022 dependency proceedings. Thus, the trial court had jurisdiction to enter the final PFA order on behalf of the Children and grant temporary custody of them to Mother. We need not evaluate the merits of the underlying final PFA order because Father did not raise that challenge on appeal.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 7/16/2025